IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:15-cr-05198-RBL |
| Plaintiff, | DEFENDANT TROY KELLEY'S TRIAL BRIEF |
| vs. | |
| TROY X. KELLEY, | |
| Defendant. | |

## I.     INTRODUCTION

Troy Kelley submits this trial brief in connection with the trial scheduled for March 14, 2016.

## II.     BACKGROUND

**A.     The Stolen Property and Wire Fraud/Money Laundering Charges.**

This is a fraud case that does not have a victim. The evidence will show that no one lost property or money as a result of the scheme alleged in the government's indictment. Mr. Kelley could not have intended to cause financial harm to any person under the facts the government intends to prove.

Mr. Kelley received a fee directly from escrow customers and, in exchange, those customers received reconveyance services that were reasonable in relation to those charged in

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  the marketplace. Those customers had no expectation of any refund and voluntarily paid a fee

2  to Mr. Kelley. No one lied to any escrow customers.

3      From the government's pleadings, it is apparent that their proposed proof will be

4  inadequate to sustain a conviction. The government's latest iteration of its theory of fraud is

5  that Mr. Kelley stole property from title companies that merely held the money as escrow

6  agents at the direction and control of escrow customers. The government cites no authority

7  holding that, under 18 U.S.C. § 2315 or 18 U.S.C. § 1341, one can be cheated out of money he

8  simply possesses but does not own. Nor does it cite case where someone is allegedly cheated

9  out of the money by paying it to the alleged "schemer" with the consent of the owner. *United*

10  *States v. Bennett,* 665 F.2d 16, 21-22 (2d Cir. 1981) ("Because the concept of stolen property

11  requires an interference with the property rights of its owner, property that has been

12  transported…with the consent of the owner cannot be considered "stolen[.]"). To be blunt, the

13  theory does not make sense.

14      We have asked the Court to manage the government's order of proof such that it proffer

15  sufficient facts to show that the title companies had an ownership interest in the property,

16  which could qualify them as "victims" of an alleged fraud. *See Hammerschmidt v. United*

17  *States*, 265 U.S. 182, 188 (1924) ("[The] words 'to defraud' . . . refer . . . to wronging one in

18  his property rights by dishonest methods or schemes."); *McNally v. United States*, 483 U.S.

19  350, 359 (1987) ("[T]he mail fraud statute . . . had its origin in the desire to protect individual

20  property rights, and any benefit which the Government derives from the statute must be limited

21  to the Government's interests as property holder."); *Cleveland v. United States*, 531 U.S. 12, 15

22  (2000) ("It does not suffice, we clarify, that the object of the fraud may become property in the

23  recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in

24  the hands of the victim."). The Court could do so by limiting the government's proof until

25  such time as a property interest is shown, or by holding a preliminary hearing to require the

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 2

government to make an adequate showing of its intended proof. *See, e.g., United States v. Andrus,* 775 F.2d 825, 836–37 (7th Cir.1985) (requiring government to proffer or present evidence to establish admissibility of co-conspirator statements). The Court's active management of the proof would further the goal of judicial economy and would be in the interests of justice. By proceeding in this fashion, the Court will avoid a likely mistrial when the Court is required to dismiss Counts 1 and 6-10 at the close of the government's case for lack of sufficient evidence. A mistrial will be necessary because it would be unfair for the tax charges to go to the same jury that heard evidence of the alleged fraud that never occurred. *See, e.g.*, *United States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir. 2009) ("'Retroactive misjoinder' arises where joinder of multiple counts was proper initially, but later developments—such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions—render the initial joinder improper.") (quoting *United States v. Vebeliunas*, 76 F.3d 1283, 1293–94 (2d Cir. 1996)); *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (remanding for new trial on remaining counts because "in retrospect, the jury should never have heard evidence on the vacated count").

**B.      The Tax Charges.**

The government's tax charges lack all merit. The thrust of the government's case is that Mr. Kelley reported income and paid taxes in the wrong tax years. The government does not contend that Mr. Kelley never intended to report the income he received as reconveyance fees. It does not contend that he never intended to pay taxes on it. To the contrary, the government must concede that Mr. Kelley reported the existence of all funds held to the Internal Revenue Service—his receipt of the funds was detailed on schedules filed with his business returns. Moreover, the government's proof will also show that Mr. Kelley had a principled plan to report the funds received under a method he understood was consistent with revenue recognition practices followed by the title industry. Mr. Kelley disclosed the exact

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

method of his revenue recognition on his tax returns.  Mr. Kelley offset the income disclosed

on his business tax returns with expenses he believed were reasonable.

The government may disagree with the position Mr. Kelley took with the IRS regarding

revenue recognition and business expenses, but Mr. Kelley will be shown to have acted in

good faith, and believed he was complying with the law, in connection with his tax reporting.

As a result, Mr. Kelley submits he will be acquitted of all tax charges.

## III.    LEGAL ISSUES

### A.    Request for Individualized Voir Dire re Pretrial Publicity or Other Matters That Could Improper Affect the Venire Panel.

At the pretrial hearing, the Court indicated that it would consider individualized

questioning of potential jurors who indicate that they were exposed to pretrial publicity.

However, the Court took the matter under submission.  Defense counsel makes this submission

to flesh out its position stated at the pretrial conference.  Mr. Kelley respectfully requests that

the Court conduct such individualized questioning, both to more effectively uncover the extent

to which any exposure may have biased a potential juror and to prevent a juror's account of

what he or she has read or heard from infecting the remainder of the venire.

The Supreme Court has emphasized the importance of "searching questioning of

prospective jurors . . . to screen out those with fixed opinions as to guilt or

innocence." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 564 (1976).  As Justice Brennan

noted:

> Particularly in cases of extensive publicity, defense counsel should be accorded
> more latitude in personally asking or tendering searching questions that might
> root out indications of bias, both to facilitate intelligent exercise of peremptory
> challenges and to help uncover factors that would dictate disqualification for
> cause.  Indeed, it may sometimes be necessary to question on voir dire
> prospective jurors individually or in small groups, both to maximize the
> likelihood that members of the venire will respond honestly to questions
> concerning bias, and to avoid contaminating unbiased members of the venire
> when other members disclose prior knowledge of prejudicial information.

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

*Id.* at 602 (Brennan, J., concurring).  As the Ninth Circuit put it, "when pretrial publicity is great, the trial judge must exercise correspondingly great care in all aspects of the case relating to publicity which might tend to defeat or impair the rights of an accused."  *Silverthorne v. United States*, 400 F.2d 627, 637-38 (9th Cir. 1968).  Thus, in *Silverthorne*, the Ninth Circuit *reversed* a conviction based on the trial court's failure to conduct individualized voir dire, holding that in such a case "[t]he court should . . . [make] a careful, individual examination of each of the jurors involved, out of the presence of the remaining jurors, as to the possible effect of the [publicity.]. . . . [T]he least required of the district court was to conduct a careful examination of each of the jurors."  *Id.* at 639 (quoting *Coppedge v. United States*, 272 F.2d 504, 508 (D.C. Cir. 1959)).[1]

Here, as in *Silverthorne*, the allegations against Mr. Kelley have been met by a very significant volume of prejudicial pretrial publicity.  This has included:  multiple prominent stories and news reports in the Seattle Times, The News Tribune, and other local sources detailing the allegations against Mr. Kelley[2]; multiple news reports relating to potential

---

[1] Other circuit courts have likewise concluded that individual voir dire is the appropriate course in cases with substantial pretrial publicity. *See, e.g., United States v. Colabella*, 448 F.2d 1299, 1303-04 (2d Cir. 1971) ("It is too much to expect of human nature that a juror would volunteer, in open court, before his fellow jurors, that he would be influenced in his verdict by a newspaper story of the trial.  No only so, but had one or more of them said they would be so influenced, and especially if they had then explained why, the damage to the defendant would have been spread to the listening other jurors."); *United States v. Dellinger*, 472 F.2d 340, 376-77 (7th Cir. 1972) ("[I]t is undoubtedly possible to question the prospective jurors about pretrial publicity without exposing other members of the venire to the publicity. The procedure of individual questioning recommended by the American Bar Association, Standards Relating to Fair Trial and Free Press § 3.4 (Approved Draft, 1968), is of course one method.").  As the Seventh Circuit noted, the American Bar Association likewise recommended individualized questioning outside the presence of the remaining veniremen. ABA Standard on Criminal Justice 8-5.4("If it is likely that any prospective jurors have been exposed to prejudicial publicity, they should be individually questioned to determine what they have read and heard about the case and how any exposure has affected their attitudes toward the trial.  Questioning should take place outside the presence of other chosen and prospective jurors and in the presence of counsel.")

[2] *See, e.g.*, Jordan Schrader and Melissa Santos, State Auditor Troy Kelley indicted on charges of tax evasion, keeping stolen money, The News Tribune, Apr. 16, 2015, available at http://www.thenewstribune.com/news/politics-government/article26279461.html; Jordan Schrader, Judge grants hearing on money seized from Troy Kelley, The News Tribune, Nov. 2, 2015, available at http://www.thenewstribune.com/news/politics-government/article42308805.html; State Auditor charged with false tax returns: 'I did not break the law', KIRO7, Apr. 16, 2015, available at http://www.kiro7.com/news/state-auditor-troy-kelley-indicted-false-tax-retur/43485718; Gene Johnson, FBI agent: Millions in fees weren't Troy Kelley's to keep, King5, Dec. 2, 2015,  http://www.king5.com/story/news/politics/2015/12/02/fbi-agent-millions-fees-werent-troy-kelleys-keep/76689646/; Rachel La Corte, State Auditor Troy Kelley pleads not guilty to new

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

impeachment proceedings against Mr. Kelley or demands from other elected officials that Mr.

Kelley resign[3]; editorials opining on Mr. Kelley's business practices and urging his

impeachment or resignation[4]; new reports concerning a separate inquiry by the Attorney

General regarding Mr. Kelley's hiring practices as State Auditor[5]; and news reports concerning

a civil suit filed by a borrower who alleges Mr. Kelley stole from him.[6]  Of course, the critical

question is not "the fact of publicity but . . . [an] assessment of its nature."  *Silverthorne*, 400

F.2d at 631.  As the list above makes clear, the tenor of publicity surrounding Mr. Kelley has

been extremely prejudicial, as lawmakers and editorialists alike have taken every possible

chance to publicly impugn Mr. Kelley's honesty, integrity, and fitness to hold office, and make

---

charges, The Columbian, Sep. 11, 2015, available at http://www.columbian.com/news/2015/sep/11/state-auditor-troy-kelley-pleads-not-guilty-to-new-charges/.

[3] *See, e.g.*, Joel Connely, Inslee letter to indicted State Auditor: Resign immediately, Seattle Post-Intelligencer, Apr. 17, 2015, available at http://blog.seattlepi.com/seattlepolitics/2015/04/17/inslee-letter-to-indicted-state-auditor-resign-immediately/; Jordan Schrader, Lawmakers offer resolution to impeach state Auditor Troy Kelley, The News Tribune, Dec. 7, 2015, available at http://www.thenewstribune.com/news/politics-government/article48499340.html; Lawmakers seek to impeach State Auditor Troy Kelley, King5, Dec. 8, 2015, available at http://www.king5.com/story/news/politics/state/2015/12/07/lawmakers-seek-impeach-state-auditor-troy-kelley/76956092/; Joseph O'Sullivan, Impeaching embattled state Auditor Troy Kelley could take up lots of lawmakers' time, The Seattle Times, Dec. 16, 2015, available at http://www.seattletimes.com/seattle-news/politics/impeaching-troy-kelley-could-take-up-lots-of-lawmakers-time/;  Jordan Schrader, Indicted state Auditor Troy Kelley returns from leave, The Olympian, Dec. 8, 2015, available at http://www.theolympian.com/news/politics-government/article48661655.html.

[4] *See, e.g.*, Editorial, Impeach Auditor Troy Kelley, don't punish his staff, The News Tribune, Feb. 27, 2016, available at http://www.thenewstribune.com/opinion/editorials/article62771217.html;  Editorial, Lawmakers: Prepare to impeach Troy Kelley, The News Tribune (Oct. 21, 2015), available at http://www.thenewstribune.com/opinion/editorials/article40776765.html; Editorial, Legislature must impeach state Auditor Troy Kelley, The Seattle Times, Dec. 9, 2015, available at http://www.seattletimes.com/opinion/editorials/legislature-must-impeach-state-auditor-troy-kelley/;  Editorial, Change state law to oust Troy Kelley, The Seattle Times, May 3, 2015, available at http://www.seattletimes.com/opinion/editorials/change-state-law-to-oust-troy-kelley/; Brian Sonntag, Troy Kelley should resign or be removed as auditor, The News Tribune, Nov, 20, 2015, available at http://www.thenewstribune.com/opinion/op-ed/article45637401.html.

[5] *See, e.g.*, Mike Carter, State AG opens new probe into Auditor Troy Kelley, The Seattle Times, Jun. 9, 2015, available at http://www.seattletimes.com/seattle-news/crime/state-ag-opens-new-investigation-into-troy-kelley/; Gene Johnson, Attorney General to investigate indicted Washington auditor, King5, Jun. 9, 2015, available at http://www.king5.com/story/news/local/olympia/2015/06/09/washington-attorney-general-investgates-auditor/28744725/;  Jordan Schrader, Troy Kelley faces second criminal investigation, The News Tribune, Jun. 9, 2015, available at http://www.thenewstribune.com/news/politics-government/article26298367.html.

[6]*See, e.g.*, John Langeler, Bellevue man sues State Auditor, claims being ripped off,  King5, Dec. 30, 2015, available at http://www.king5.com/story/news/2015/12/30/troy-kelley-state-auditor-lawsuit-federal-indictment/78060334.

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

conclusory allegations regarding his conduct.  In light of this extensive coverage,

individualized voir dire is necessary "both to maximize the likelihood that members of the

venire will respond honestly to questions concerning bias, and to avoid contaminating unbiased

members of the venire when other members disclose prior knowledge of prejudicial

information."  *Nebraska Press Ass'n*, 427 U.S. at 602 (Brennan, J., concurring).

**B.      Request that Parties Exercise Their Peremptory Challenges Sequentially Rather than Simultaneously.**

At the pretrial hearing, the Court stated its intention to require the parties to

simultaneously exercise their peremptory challenges, as has apparently been its practice for

many years.  Defense counsel respect the Court's position and understand that the Court has

discretion and control as to how peremptory challenges are exercised.  However, defense

counsel also respectfully request that the Court consider a different method of challenging

jurors in this case.

Particularly in a criminal case, it is critical to be in a position to know which jurors will

remain in the jury box after the exercise of a peremptory challenge.  Depending on the

composition of those jurors in the box, defense counsel may waive a challenge.  As the Court

knows, using a peremptory challenge is often not an absolute decision—it is a question of

whether a defense lawyer believes that one juror may be fairer than another.  Simultaneous

exercise of peremptory challenges prevents defense counsel from being in a position to make

those kinds of critical judgments.

In addition, simultaneous exercise of peremptory challenges arguably dilutes the

number of challenges afforded the defendant.  Because defense counsel will not know which

jurors will the prosecution will challenge, there is a significant possibility that both sides will

challenge the same juror.  This lessens the effectiveness of jury selection for the criminal

defense lawyer.

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 7

1    Defense counsel is under no illusion that the American Bar Association's standards for

2    criminal justice are not binding on this Court in any way.  However, it is useful to point out

3    that defense counsel's position is consistent with those expressed by this national lawyer's

4    organization.  *See* ABA Criminal Justice Standard 15-2.7 (Procedure for exercise of

5    challenges) ("After completion of the voir dire examination and the hearing and determination

6    of all challenges for cause, counsel should be permitted to exercise their peremptory challenges

7    by alternately striking names from the list of panel members until each side has exhausted or

8    waived the permitted number of challenges").[7]

9    To be clear, defense counsel is not suggesting it would be error for the Court to conduct

10   jury selection in the manner it intends.  *United States v. Warren*, 25 F.3d 890, 894 (9th Cir.

11   1994).  Rather, defense counsel are merely suggesting that the Court permit this method of

12   selection in this case because undersigned defense counsel are accustomed to it; this is a case

13   that has characteristics that raise real concerns over jurors' ability to be fair (including issues

14   relating to Mr. Kelley's status as a publicly elected official and the pretrial publicity); and

15   because it is not apparent that there is a downside to the Court to this approach.  Defense

16   counsel's recollection is that government counsel expressed no strong preference which

17   method is used.

18   **C.      Elements of Charged Offenses—State Law Criminal Statutes Are Irrelevant.**

19   Although this is a federal case alleging violations of federal law, the government

20   attempts to rely on Washington state law to prove that Mr. Kelley "stole" property within the

21   meaning of the (federal) National Stolen Property Act.  *See, e.g.*, Dkt. No. 201, pp. 10-13

22   (arguing that because Mr. Kelley's conduct allegedly violates Washington state theft statutes, it

23   is punishable under federal law); Dkt. No. 156, pp.6-7 (stating that government intends to

24   propose jury instructions for Washington criminal theft statutes).  The government wants to use

25

---

[7] Available at http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_jurytrial_toc.html.

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  state law because it believes that Washington's theft statutes take a very lax view of the

2  property interest a "victim" must have to support a conviction in Washington.  Dkt. No. 201,

3  pp. 10-13.  The government argues that, "since 'ownership' in this context is a question of state

4  law," the NSPA applies to any taking "if such conduct amounts to theft under state law."  *See*

5  Dkt. No. 201, p. 10 (citing *United States v. Lequire*, 672 F.3d 724, 728 (9th Cir. 2012)).

6  　　　　The government is wrong: "in the absence of a plain indication of an intent to

7  incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute

8  should not be dependent on state law."  *United States v. Turley*, 352 U.S. 407, 411 (1957)

9  (interpreting the meaning of "stolen, converted or taken by fraud" under 18 U.S.C. § 2314).

10  The only case cited by the government in support of its position, *Lequire,* itself makes this

11  plain.  There the Ninth Circuit, in interpreting a federal embezzlement statutes, concluded that

12  "*federal law defines embezzlement[.]*"  *Lequire*, 672 F. 3d at 728 (emphasis added).  Thus, it

13  does not matter whether state law defining embezzlement, larceny, theft or similar crimes

14  enlarges or restricts the contours of what might be considered "stealing."  *United States v.*

15  *Darrell*, 828 F.2d 644, 649 (8th Cir. 1987) ("[T]he meaning of the federal statute should not

16  depend on state law definitions of larceny.") (citing *Turley*, 352 U.S. at 411).  States are

17  powerless to create, modify, or otherwise define the scope of federal criminal law: federal

18  criminal law controls.[8]

19  　　　　The definition of stolen property under federal law is clear:  "all felonious

20  takings…with the intent to deprive the *owner* of the rights and benefits of *ownership*[.]"

21

---

22  [8] Of course, Congress has the power to define a federal crime expressly predicated on a violation of a state law.
*See, e.g.*, 18 U.S.C. § 1956(a)(1)(B)(ii) (making it a crime to launder money "to avoid a transaction reporting

23  requirement under State or Federal law"); 18 U.S.C. § 1952 (criminalizing various forms of interstate activity for
the purposes of committing or promoting "unlawful activity" and defining "unlawful activity" to include

24  "prostitution offenses in violation of the laws of the State in which they are committed . . . [and] extortion,
bribery, or arson in violation of the laws of the State in which committed").  But where Congress has not given "a

25  plain indication of an intent to incorporate diverse state laws into a federal criminal statute," state criminal law has
no bearing on the interpretation of federal law.  *Turley*, 352 U.S. at 411.  The statutes at issue in this case do not
incorporate state law.

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 9

*Turley*, 352 U.S. at 417 (emphasis added). To make this showing under 18 U.S.C. § 2315, the government has to prove that Mr. Kelley took money "from one having the attributes of an owner." *United States v. Carman*, 577 F.2d 556, 565 (9th Cir. 1978).[9] The requirements of "ownership" and "intent to deprive" are incorporated into the Ninth Circuit Model Jury Instructions. Ninth Circuit, Manual of Model Criminal Jury Instructions § 8.190 (2010). Using, as the government suggests, Washington State law or Washington State jury instructions would be reversible error.

**D.      Washington State Law Is Only Relevant In Considering "Ownership."**

As demonstrated above, federal law alone defines the scope of federal crimes. *See Lequire*, 672 F. 3d at 728 (relying solely on prior Ninth Circuit opinions to define "embezzle"); *Turley*, 352 U.S. at 411. Under 18 U.S.C. § 2315 and related statutes, state law is *only* relevant to determine whether a person has a traditionally recognized property right. *Lequire*, 672 F. 3d at 728; *Cleveland*, 531 U.S. at 23–24 (analyzing state law to determine whether a property right was created). Thus, in *Lequire*, the Ninth Circuit looked to state law to determine whether property was held in trust, but not to whether an embezzlement occurred. *Lequire*, 672 F. 3d at 728. The Court should engage in the same analysis in this case.

**E.      The Government Cannot Prove that Old Republic and Fidelity Owned Escrow Funds.**

The government's proof at trial will fail to show that Old Republic or Fidelity owned a protectable property right in money held by them in escrow, and Mr. Kelley could not have stolen or defrauded those funds from them. *Carman*, 577 F.2d at 565; *see also United States v. Rogers*, 786 F.2d 1000, 1003 (10th Cir. 1986) (holding that defendant did not steal within the

---

[9] *See also Dowling v. United States,* 473 U.S. 207 (1985) (holding that the sale of bootleg records did not violate the National Stolen Property Act because "the copyright holder's dominion is subjected to precisely defined limits") (quoting 18 U.S.C. § 2314); *United States v. Long Cove Seafood, Inc.*, 582 F.2d 159 (2d Cir. 1978) (dismissing § 2314 charges where the government could not prove ownership of the allegedly stolen goods because the National Stolen Property Act covers only "felonious (taking[s]) with intent to deprive the owner of the rights and benefits of ownership") (quoting *United States v. Turley,* 352 U.S. 407, 417 (1957)).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

meaning of the NSPA when he took back property lawfully seized by the government and in the government's possession and control); "[The NSPA] should not be expanded at the government's will beyond the connotation—depriving an owner of its rights in property—conventionally called to mind.") (quoting *United States v. McClain,* 545 F.2d 988, 1002 (5th Cir.1977)).[10] "The hallmark of a protected property interest is the right to exclude others." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999); *see also Int'l News Serv. v. Associated Press*, 248 U.S. 215, 250 (1918) (Brandeis, J., concurring) ("An essential element of individual property is the legal right to exclude others from enjoying it."). Thus, the Supreme Court held in *Dowling v. United States* that the National Stolen Property Act—18 U.S.C. §§ 2311 and 2314–2315—did not cover copyrights because "the copyright holder's dominion is subjected to precisely defined limits." *Dowling v. United States*, 473 U.S. 207, 217 (1985).[11] This logic applies with even greater force to escrow agents.

Under Washington law, ownership of escrowed funds is deemed to remain with the depositor until the escrow conditions are completed, at which time ownership transfers to the payee. *In re Brown*, 28 F. App'x 725, 727 (9th Cir. 2002) (citing *Lechner v. Halling,* 216 P.2d 179, 183-84 (Wash. 1950), *Angell v. Ingram*, 213 P.2d 944, 945 (Wash. 1950); *see also In re Presidential*, 180 B.R. at 238, *abrogated on other grounds by In re Mortgage Store, Inc.*, 773 F.3d 990 (9th Cir. 2014)) ("Prior to the conditions being met for the funds to be transferred from the buyer to the seller, the escrow agent holds the funds as the agent of the buyer."). An escrow agent *does not* have the exclusive right to use and control escrow funds at will. To the

---

[10] The government concedes that Mr. Kelley made no false representations to the borrowers and in fact had no contact with them at all. The government also does not contend that the borrowers had a protectable interest in the funds once paid at closing pursuant to charges stated in the borrowers' settlement statement and escrow instructions.

[11] Because *Dowling* interpreted the scope of a federally granted right—copyrights—it looked solely to federal law to determine whether copyright holders "owned" property within the meaning of the National Stolen Property Act. By contrast, the rights and duties of escrow agents like Fidelity and Old Republic are creatures of state law and so the scope of escrow agents' rights turns on state law.

DEFENDANT TROY KELLEY'S TRIAL
BRIEF - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  contrary, "the escrow holder has *no personal interest in the escrow deposit* other than carrying

2  out his or her obligations under the escrow agreement."  28 Am. Jur. 2d Escrow § 22 (emphasis

3  added).  In Washington as elsewhere, "[t]he escrow agent's duties and limitations are defined .

4  . . by his instructions. . . .  'As a general rule, the escrow holder must act strictly in accordance

5  with the provisions of the escrow agreement; he must comply strictly with the instructions of

6  the parties.'"  *Nat'l Bank of Washington v. Equity Inv'rs*, 81 Wash. 2d 886, 910 (1973)

7  (quoting 30A C.J.S. Escrows § 8 (1965)); *see also* 28 Am. Jur. 2d Escrow § 22 ("[W]hen a

8  person acts as the depositary of an escrow, he or she is absolutely bound by the terms and

9  conditions of the deposit and charged with the strict execution of the duties thereby voluntarily

10  assumed.").  That is, an escrow agent is an agent, bound to do with the money only what his

11  principals instruct.  Thus, an escrow agent who fails to disburse the funds precisely as a

12  depositor instructs "can be held liable to his principals for damage proximately caused from his

13  breach of the escrow instructions."  *Styrk v. Cornerstone Investments, Inc.*, 810 P.2d 1366,

14  1371 (Wash. Ct. App. 1991).

15      This point was forcefully and repeatedly made by the title companies themselves after

16  they were sued by borrowers in a spate of class action suits.  As will be shown at trial, during

17  the class action litigation, Fidelity argued, "Plaintiffs [escrow customers] *specifically*

18  *authorized* and directed the Escrow Agents to collect reconveyance fees in addition to general

19  escrow fees and to pay the reconveyance fees to the third-party entity Post Closing Department

20  [by signing HUD-1 statements]. . . .  Neither Escrow Agent could ignore the requirements to

21  collect separate reconveyance fees and disburse them to the third party Post Closing

22  Department."  Old Republic made the same point, stating "the parties' escrow instructions (i.e.,

23  their contracts) plainly disclosed the existence and amount of the reconveyance fee and

24  expressly authorized Old Republic to collect it."  A review of escrow instructions that will be

25  introduced at trial confirms that the borrowers expressly instructed the escrow companies to

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  distribute funds—including the reconveyance fees—in accordance with the HUD-1 settlement

2  statements.  As important, both Fidelity and Old Republic—the purported victims—have

3  expressly disclaimed any right to the money, as will be shown at trial.  Old Republic answered

4  requests for admission during litigation specifically disclaiming ownership of the funds

5  received by Kelley from its escrow customers.  Fidelity filed pleadings to the same effect.

6  Because escrow companies, as a matter of law, do not maintain property rights in

7  escrowed money, and because Fidelity and Old Republic deny any such property rights, the

8  government will be unable to offer proof that could lead a reasonable juror to find Mr. Kelley

9  guilty of Counts 1 and 6–10.

10 **F.     Count 3 Is Facially Deficient and Cannot Be Consolidated with Count 2.**

11 Mr. Kelley moved to dismiss Count 2 or to require the government to elect between

12 Counts 2 and 3 because they are multiplicitous.  The Court granted Mr. Kelley's motion, but

13 permitted the government to choose between election and consolidation of the charges.  Dkt.

14 105.  The government has stated that it intends to consolidate Count 3 (which Mr. Kelley

15 moved originally to dismiss) with Count 2.  However, the government cannot consolidate the

16 charges because it is not permitted to bring a false declaration charge under 18 U.S.C. § 1623

17 based on a declaration filed with the Court.  In *Dunn v. United States*, 442 U.S. 100, 113

18 (1979), the Supreme Court stated that Section 1623 does not "encompass statements made in

19 contexts less formal than a deposition."  *See also United States v. Benevolence Int'l Found.,*

20 *Inc.,* No. 02 CR 414, 2002 WL 31050156, at *7 (N.D. Ill. Sept. 13, 2002) (and cases cited

21 therein).  As the government does not allege that the false declarations made in Count 3 were

22 made in a deposition or in a setting more formal, but only in a declaration in support of a

23 motion in a civil case, the Court should dismiss Count 3 and order the government to proceed

24 only on the allegations set forth in Count 2.

25

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# IV. CONCLUSION

Troy Kelley respectfully submits, for the reasons set forth in this trial brief, and for the several other reasons that will be presented at trial, he will be acquitted of all charges.

DATED this 7th day of March, 2016.

CALFO HARRIGAN LEYH & EAKES LLP


By  *s/Angelo J. Calfo*
    Angelo J. Calfo, WSBA #27079
    Patricia A. Eakes, WSBA No. 18888
    Emily Dodds Powell, WSBA #49351
    Andrew R.W. Hughes, WSBA #49515

    999 Third Avenue, Suite 4400
    Seattle, WA  98104
    Telephone:  (206) 623-1700
    Email:  angeloc@calfoharrigan.com
        peakes@calfoharrigan.com
        emilyp@calfoharrigan.com
        andrewh@calfoharrigan.com

    *Attorneys for Defendant Troy X. Kelley*

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andrew C. Friedman                andrew.friedman@usdoj.gov

Arlen R. Storm                    arlen.storm@usdoj.gov

Katheryn Kim Frierson             katheryn.k.frierson@usdoj.gov

Richard E. Cohen                  richard.e.cohen@usdoj.gov


                                  *s/Susie Clifford*

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717