The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff,

　　v.

TROY X. KELLEY,

　　　　　　　Defendant.

NO. CR15-5198RBL

**RESPONSE TO MOTION TO DISMISS FOR GRAND JURY ABUSE AND FOR DISCOVERY**

## I.    INTRODUCTION

Defendant contends the Indictment should be dismissed because, he claims, the case agent testified falsely to the grand jury.  (Dkt. 388).  Courts reserve the remedy of dismissal for "extreme" and "flagrant" cases of grand jury abuse.  In particular, to prevail on a motion to dismiss for false grand jury testimony, the defendant must establish that (1) a witness committed perjury; (2) the prosecutor acted in bad faith; and (3) the perjured testimony was material.  Defendant cannot make any of these showings with respect to any of the testimony he alleges was false.

As a threshold matter, the motion fails because defendant does not even contend the agent intentionally gave misleading testimony.  Under controlling case law, only *knowing* false testimony can serve as a basis for dismissal.  But defendant does not allege the agent acted knowingly; only that the allegedly false statements were "*reckless.*"  Dkt 388 at 19 (emphasis added).  Defendant does not cite a single case from *any* jurisdiction

1  granting the relief he seeks here:  Dismissal based on unintentional inaccuracies in a

2  witness's testimony.  Thus, even under defendant's view of the facts, the motion is

3  unsupported by the law and should be denied.

4         Defendant criticizes the case agent's testimony on three issues.  The testimony on

5  two of these three issues (industry practices regarding refunds and the transmittal of a

6  spreadsheet to Old Republic), was, in fact, accurate and supported by the evidence.

7  While defendant may disagree with the agent's testimony on these two topics, the

8  existence of a factual dispute does not establish perjury requiring dismissal.  To the

9  contrary, resolving such disputes is the reason we have trials.

10        The only actual inaccuracy in the case agent's grand jury testimony relates to Old

11 Republic's use of the proceeds of a settlement defendant paid Old Republic after Old

12 Republic exposed Mr. Kelley's fraud in a civil suit.  The case agent testified that Old

13 Republic distributed the settlement funds to borrowers.  As the government learned long

14 after the grand jury returned its indictment, this statement was incorrect because Old

15 Republic in fact used a large share of the proceeds to pay attorney fees it had incurred in

16 the litigation, and returned only some of the money to borrowers.

17        The case agent's testimony on this topic, while inaccurate, was given in good faith

18 and based on a reasonable investigation.  Indeed, the case agent interviewed a witness

19 with knowledge of this issue the day before the case agent testified to the grand jury, and

20 the case agent repeated to the grand jury what he had been told almost verbatim.  Thus,

21 the testimony was not knowingly false, and in no way evidences bad faith on the part of

22 the government.  In addition, Old Republic's use of the settlement proceeds years *after*

23 the offense conduct is immaterial the grand jury's probable cause determination.

24        The U.S. Attorney's Office and the case agent take seriously their obligation to

25 provide accurate information to grand juries.  But a single inadvertent inaccuracy in

26 hundreds of pages of grand jury transcripts, while regrettable, obviously does not

27 constitute the type of "extreme" or "flagrant" misconduct that would warrant dismissal of

28 the Indictment.  The motion should be denied.

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 2

## II.   LEGAL STANDARD

**A.   Dismissal for Prosecutorial Misconduct is Warranted Only Under "Extreme" and "Flagrant" Circumstances.**

Grand jury proceedings are non-adversarial, *ex parte* investigations.  *United States v. Calandra*, 414 U.S. 338, 343-44 (1974).  The grand jury's function is not to adjudicate guilt or innocence, but only to determine whether probable cause exists to charge the defendant.  *Id.*  Thus, if an indictment is valid on its face, it is not subject to challenge on the basis of incompetent or inadequate evidence, or even on bases such as failure to present exculpatory evidence or violation of a defendant's Fifth Amendment rights.  *Id.*  A defendant moving to dismiss an indictment based on prosecutorial misconduct before the grand jury must overcome this "presumption of regularity" that attaches as a matter of law to grand jury proceedings.  *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991).

Dismissal is a remedy for the prosecutor's breach of his "duty of good faith."  *United States v. Basurto*, 497 F.2d 781, 786 (9th Cir. 1974).  However, an indictment may be dismissed for prosecutorial misconduct only in "extreme situations."  *United States v. Tham*, 665 F.2d 855, 863 (9th Cir. 1981); *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977) (dismissal appropriate "only in a flagrant case" of grand jury abuse).  The defendant must establish he was actually prejudiced by the prosecutorial misconduct, that is, that "there is grave doubt" as to whether the prosecutorial misconduct "substantially influenced the grand jury's decision to indict."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 263 (1988).

**B.   Kelley  Must Establish That (1) A Witness Knowingly Committed Perjury; (2) the Prosecutor Acted in Bad Faith; and (3) the Perjury Was Material.**

Where a defendant seeks dismissal based on allegations of false testimony before the grand jury (as defendant does here), the defendant must, at a minimum, make three factual showings.

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 3

1    *First*, the defendant must show that the witness *intentionally* testified falsely.

2    *Tham*, 665 F.2d 863 (dismissal appropriate only in extreme cases, such "as where the

3    prosecutor *knowingly* presents perjured testimony") (emphasis added); *see Kennedy*, 564

4    F.2d at 1338 ("perhaps only where *knowing* perjury, relating to a material matter, has

5    been presented to the grand jury should the trial judge dismiss an otherwise valid

6    indictment") (emphasis added); *United States v. Basurto*, 497 F.2d 781, 786 (9th Cir.

7    1974) (affirming dismissal where witness informed the prosecutor "that he had

8    committed *perjury* before the grand jury in important respects") (emphasis added).

9    By contrast, the fact that a witness *unwittingly* provided inaccurate testimony is

10   insufficient to support dismissal.  *United States v. Levine*, 700 F.2d 1176, 1180 (8th Cir.

11   1983) ("misstatements or mistakes alone" are insufficient to "justify the dismissal of an

12   indictment"; "perjury requires that a person knowingly make false declarations").

13   Similarly, the fact that other evidence in the case contradicts or discredits a grand jury

14   witness's testimony does not establish that the witness committed perjury; it merely

15   creates a conflict in evidence for the jury to resolve.  *United States v. Brown*, 634 F.2d

16   819, 827 (5th Cir. 1981) (fact that "testimony is challenged by another witness or is

17   inconsistent with prior statements" is insufficient to establish a due process violation)

18   *United States v. Bortnovsky*, 879 F.2d 30, 33 (2nd Cir. 1989) ("presentation of a witness

19   who recants or contradicts his prior testimony is not to be confused with perjury.  It was

20   for the jury to decide whether or not to credit the witness.")

21   *Second*, the defense must establish that the prosecutor acted in bad faith.  As noted

22   above, dismissal is a remedy for a violation of the "duty of good faith on part of the

23   prosecutor with respect to the court, the grand jury, and the defendant." *Basurto*, 497

24   F.2d at 786.  Consequently, dismissal is appropriate only where the court finds an actual

25   "violation o[r] abuse of this duty."  *Id.*; *United States v. Richman*, 600 F.2d 286, 292 (1st

26   Cir. 1979) (trial court properly denied motion to dismiss indictment where witnesses

27   testified falsely to grand jury; while prosecutor may have been "negligent" in failing to

28   realize that the testimony was false, "negligence is not converted into subornation").

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 4

1    *United States v. Samango*, cited by the defendant, is not to the contrary.  607 F.2d

2    877 (9th Cir. 1979).  While *Samango* recognized the fact that "unintentional" misconduct

3    can "cause improper influence and usurpation of the grand jury's role," it did *not* hold

4    that dismissal is an appropriate *remedy* for unintentional conduct.  *United States v.*

5    *Garcia*, 2009 WL 1564219 at *1 (N.D. Cal. June 3, 2009) (recognizing that *Samango's*

6    reference to unintentional conduct was *dicta*, and pointing to defendant's failure to

7    identify any case of dismissal "because of a single, unintentional instance of inconsistent

8    testimony by government agents").  To the contrary, *Samango*, consistent with the

9    authorities cited above, stated that dismissal is a remedy for a prosecutor's breach of the

10    "duty of good faith" and is intended to "discourage[e] future *deliberate* government

11    impropriety."  *Id.* at 884 (emphasis added).  *Samango* found dismissal proper only

12    because the government had provided the grand jury with evidence that "served no

13    purpose other than *calculated* prejudice" and otherwise actively "discouraged thorough,

14    thoughtful and independent evaluation of the evidence" by the grand jury. *Id.* at 883

15    (emphasis added).  *Samango* does not hold, as defendant suggests, that a court may

16    dismiss an indictment for unintentional conduct.

17    *Third,* defendant must establish the perjured testimony was material.  "If the

18    perjured testimony is not material to the guilt or innocence of the accused, its

19    presentation to the grand jury is necessarily harmless and does not require reversal of a

20    conviction or dismissal of the indictment."  *United States v. Sitton*, 986 F.2d 947, 954

21    (9th Cir. 1992).  *Basurto*, on which defendant heavily relies, is instructive.  497 F.2d at

22    786.  In *Basurto*, a witness informed the prosecutor that "all of his grand jury testimony

23    relating to . . . appellant's activities in the conspiracy prior to May 1, 1971, was untrue."

24    Because the only other witness that testified to the grand jury may have lacked

25    knowledge about this time period, the Ninth Circuit reasoned that a portion of the

26    indictment may have been entirely predicated on perjurious testimony, and that the

27    prosecutor had "abused" his prosecutorial "duty of good faith."  *Id.* at 784.  Accordingly,

28    the Ninth Circuit dismissed the indictment and stated that dismissal is appropriate "when

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 5

the perjured testimony is material, and when jeopardy has not attached." *Id.* at 786. By contrast, dismissal is *not* warranted when the perjurious testimony is not material. *E.g., Sitton,* 968 F.2d at 654; *United States v. Bracy*, 566 F.2d 649, 655 (9th Cir. 1977) (distinguishing *Basurto* and holding dismissal inappropriate because perjurious grand jury testimony was not material).

### III.    THE GRAND JURY TESTIMONY DOES NOT WARRANT DISMISSAL

### A.    The "Industry Practice" Testimony Does Not Support Dismissal

#### 1.    Relevant Background

Defendant first contends the Indictment should be dismissed because FBI Special Agent Michael Brown supposedly gave "reckless, false" testimony about the escrow industry's practices involving refunds of unused reconveyance fees. Dkt. 388 at 19. Specifically, defendant contends SA Brown misled the grand jury into believing that all escrow companies refund unused reconveyance fees. Relying on selective citations from the trial record, defendant argues that SA Brown's testimony was incorrect, and that "the whole industry operated the same way" as Mr. Kelley. *Id*. at 3. However, as explained below, SA Brown's testimony was well supported by his investigation—including Troy Kelley's own deposition testimony, in which Mr. Kelley himself acknowledged that the general industry practice was to make refunds.

SA Brown testified before the grand jury on March 18, 2015. Before addressing the specifics of the investigation into Mr. Kelley, SA Brown provided background information about the escrow industry and reconveyance practices. SA Brown prefaced this testimony by stating that he was *not* "an expert in real estate transactions and the manner in which reconveyance tracking businesses work in this case." Dkt. 389 at 10. Rather, SA Brown testified, his testimony was based on "witness interviews" and a "review of filings in the class action lawsuits." *Id.* SA Brown further clarified that his description of the process would be a "generalization of how the processes work" and

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

that "there could be a lot of varieties in individual transactions." *Id.* SA Brown then went on to testify, using a diagram, as follows:

> You can see the borrower provides in this case the $140 fee to the escrow company for reconveyance processing. That fee is then distributed to the tracking firm, and they compete the reconveyance process. They ensure that once the payoff has been made by the borrower to the lender that the deed of reconveyance is then filed with the county. . . . You can see $120 they subtract their service fee for tracking and *then return the funds to the trustee or to the borrower.*

*Id.* at 11 (emphasis added). Following this explanation, SA Brown clarified two additional times that this was "just a generalization" and that there could be "particular instances" where the process worked differently. Ex. A at 2.

As SA Brown accurately told the grand jury, his testimony was based on witness interviews and his review of pleadings in the civil suit. For one thing, SA Brown had reviewed the deposition testimony of Troy Kelley, in which Mr. Kelley himself testified that it was industry practice to refund unused reconveyance funds. Specifically, Mr. Kelley stated that, "under the common practices of the day, with the excess funds that we all agreed on, they would be refunded." Ex. B at 2; *see also* id at 1 ("If there's excess fees where we did not earn our fees, then we would refund the money. That's a common practice in the industry.") SA Brown had also interviewed industry witnesses who confirmed this fact. For example, an escrow assistant with Evergreen Note Servicing had told SA Brown that it was her company's practice to "return the [excess] fees" to the borrower "after the reconveyance was confirmed." Ex. C. In addition, one of Troy Kelley's employees had told SA Brown that it was initially Post Closing Department's practice to refund excess fees to borrowers. Ex. D.

Other evidence also supported SA Brown's testimony. SA Brown had reviewed the contracts between PCD and Fidelity and Old Republic that govern the use of reconveyance fees. These contracts require (at least in the government's view) refunds of excess fees. *E.g.* Trial Exhibit 300 (Fidelity contract, providing that "at the completion of

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  the post closing documentation if extra funds are left over, PCD shall forward funds to

2  the Customer."); Trial Exhibit 433 (Old Republic contract, stating that PCD's $20 fee

3  includes management of "client refunds").  The fact that two of the major players in the

4  industry required PCD to refund excess fees supported SA Brown's understanding that

5  refunds were the industry practice.  In addition, the government's industry expert—a

6  former president of the American Escrow Association—later confirmed in meetings with

7  the government (which were memorialized in his expert disclosure) that "during the

8  period of time covered by the Indictment, where fees were collected from borrowers

9  specifically for purpose of the paying trustees and filing reconveyances, and those fees

10  were not needed in order to pay trustees or for filing fees, *it was the industry standard to*

11  *refund the fees to borrowers."*  Ex. E at 3 (emphasis added).

12        Finally, defendant's motion omits the fact that SA Brown was not the only witness

13  who testified to the grand jury on this topic.  The government also presented testimony

14  from an industry witness who testified that she had worked for another reconveyance

15  processing firm that, like Troy Kelley, had failed to refund excess funds to borrowers

16  despite an obligation to do so.  Ex. F.  The witness testified that this practice did not

17  conform to the industry standard and that, when the witness learned of the practice, "they

18  could hear me yelling from across the office because I was very upset."  *Id.*  This

19  testimony supported SA Brown's understanding that the industry practice was to refund

20  excess funds.

21  **2.    The "Industry Practice" Testimony Was Not False or Reckless, and Certainly**
22  **Was Not Perjury.**

23        SA Brown's testimony regarding industry practices does not support defendant's

24  motion to dismiss.  First, as a threshold matter, defendant does not even contend that the

25  testimony was *knowingly* false.  Rather, defendant contends SA Brown was "reckless."

26  Dkt. 388 at 20.  Even on its face then, defendant's motion fails because it does not allege

27  knowing perjury on the part of any grand jury witness.  *Levine*, 700 F.2d at 1180; *Tham*,

28  665 F.2d 863.

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Second, the testimony was not false.  SA Brown testified that, as a general matter, escrow companies refunded excess funds, though he allowed that exceptions might exist. As discussed above there is substantial evidence—including Mr. Kelley's own deposition testimony—that this is accurate.  Indeed, the former president of the American Escrow Association opined for the government that this is the general industry practice.  Ex. E at 3.  The fact that the defense cites its own examples of contrary practices (which SA Brown acknowledged might exist) does not mean that SA Brown testified falsely; it simply means that there are factual issues for the jury to resolve.  *Brown*, 634 F.2d at 827.

Third, even if the testimony was inaccurate, it was not reckless.  To the contrary, the witness and prosecutor went to great lengths to clarify that SA Brown was not an expert in this area; that his description was a "generalization," and that there could be instances where the practice was different.  These careful and repeated qualifications are the opposite of reckless behavior.

SA Brown accurately described his understanding of the industry practice and his basis for that understanding, while appropriately disclosing that there were limits to his knowledge.  Defendant's characterization of the testimony as "reckless false testimony" is itself inaccurate and unfair.

### 3.    The Prosecutor Did Not Act in Bad Faith.

Defendant's motion fails for the additional reason that he cannot show the prosecutor acted in bad faith with respect to the industry practice testimony.  The government was advised by an industry expert that SA Brown's testimony was accurate, and, specifically, that "*it was the industry standard to refund the fees to borrowers.*"  Ex. E at 3.  The government had also reviewed Mr. Kelley's testimony to the same effect. Ex. B.  Further, as discussed in the preceding section, the prosecutor, together with the witness, went to great lengths to make clear that SA Brown was not an expert in the subject matter; that his knowledge in this area was limited; and that practices could vary depending on circumstances.  These careful qualifications are utterly inconsistent with

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   bad faith on the part of the prosecutor. The absence of bad faith is also belied by the fact

2   that the prosecutor *did* present testimony from another grand jury witness showing that at

3   least one other company, in addition to Mr. Kelley's, failed to refund excess

4   reconveyance fees. Ex. F. If the prosecutor was trying to mislead the grand jury, he

5   would not have elicited this testimony. There is no evidence of bad faith on the part of

6   the prosecutor.

7       **4.      The Testimony Was Not Material.**

8       The industry practice testimony was merely background testimony intended to

9   acquaint the grand jury with the reconveyance process. It was not material to the grand

10  jury's probable cause determination. Defendant's criminal liability does not depend on

11  whether others engaged in the same misconduct. Rather, it depends on a single disputed

12  issue: whether Kelley told escrow companies he would refund unused funds to

13  borrowers. The material facts relating to that issue are the communications between Mr.

14  Kelley and the escrow companies (which evidence his promise to refund excess fees),

15  and PCD's bank records (which show that he broke that promise). Even if every other

16  escrow company in the industry was failing to refund unused fees, this would not change

17  the fact that defendant lied when he promised to return the money, and thereby stole the

18  funds by his deception. Defendant's argument at trial that he should not be convicted

19  because others were doing to same thing was an improper effort at jury nullification—not

20  a genuine legal defense. By the same token, other companies' conduct was not material

21  to the grand jury's probable cause finding.

22      SA Brown's industry practice testimony is immaterial for the additional reason

23  that the government presented testimony from an industry witness that cured any

24  misimpression the grand jurors possibly could have received from SA Brown's

25  testimony. The industry witness specifically testified that at least one other reconveyance

26  company was not refunding excess funds. Ex. F. To the extent SA Brown's testimony

27  left the impression that all companies were refunding all excess fees (despite SA Brown's

28

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 10

1    repeated caution that practices could vary), that issue was clarified by the industry

2    witness.

3        Finally, the lack of materiality is underscored by the Court's ruling on defendant's

4    Rule 29 motion.  Defendant had the opportunity at trial to fully air his "defense" that

5    other companies in the industry were also stealing borrowers' money.  Notwithstanding

6    this evidence, the Court found "ample evidence" that a jury could unanimously find the

7    defendant guilty beyond a reasonable doubt.  Ex. G.  Given the Court's finding that the

8    evidence was sufficient to meet the elevated beyond-a-reasonable doubt standard, it is

9    clear that the evidence supports a probable cause finding.

10   **B.    The Testimony About Old Republic's Use of Settlement Proceeds Does Not

11          Support Dismissal.**

12       **1.     Relevant Background**

13       Defendant also criticizes SA Brown's testimony that Old Republic paid the

14   proceeds of its settlement with Troy Kelley to the borrowers.  As discussed below, this

15   testimony turned out to be partially inaccurate.  However, SA Brown believed his

16   testimony was accurate at the time he testified, and this belief was based on a reasonable

17   investigation.

18       SA Brown interviewed Scott Smith, Old Republic's outside counsel, on April 14,

19   2015.  According to SA Brown's Memorandum of Interview, Mr. Smith made the

20   following statement:

21          Following the settlement of Old Republic Title's lawsuit against Troy
            Kelly, Old Republic sent letters to the thousands of customers impacted,
22          notifying them that they were due a refund.  The letters also asked for
            customers to confirm their contact information.  A good number of these
23          customers responded and subsequently received their refund.

24

25   Ex. H.

26

27

28

1    SA Brown testified before the grand jury the following day, on April 15, 2015.

2  During his testimony, SA Brown repeated, almost verbatim, what he had recorded in his

3  memorandum:

4       GRAND JUROR:  When they got the money, did they give it to clients, or
        did they give it to the lawyers?
5
6       WITNESS:  Old Republic?  They notified all the borrowers that there was a
        refund due to them, and those that responded to confirm their address got a
7       refund. . .  And I think that the attorney for Old Republic said a good
        number of borrowers responded and got their refunds.
8
9  Dkt. 389 at 20.

10      Approximately 10 months later, on about February 11, 2016, the government

11  learned for the first time that Old Republic had in fact used most of the settlement

12  proceeds to offset its attorney fees, and had used only about $170,000 to pay refunds to

13  customers.  Mr. Smith made the following statement in an interview:

14      The settlement did not make Old Republic whole.  They spent over 1
        million in legal fees.  Kelley had obfuscated during the course of litigation,
15      which slowed the process and forced Old Republic to spend more to
        investigate.  There was not enough money to pay refunds for all Old
16      Republic customers, so they decided to both recover a subset of attorney's
        fees to reimburse Old Republic and send refund letters to a set of customers
17      identified by a cutoff date.
18
19  Ex. I at 2.

20      Accordingly, as the government first learned on February 11, 2016, SA Brown's

21  grand jury testimony that "all" borrowers were offered refunds was not accurate.  The

22  government disclosed this information to the defense by producing SA Brown's

23  memorandum on February 29, 2016

24
**2.     The Inaccuracy Was Not Intentional or Reckless.**
25
26      As with the "industry practice" testimony, Mr. Kelley does not contend SA Brown

27  intentionally gave false testimony to the grand jury.  Nor could he:  SA Brown's

28  testimony closely tracks what SA Brown was told (and memorialized) the previous day.

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Indeed, during closing arguments, defense counsel specifically argued that SA Brown did
2  *not* intend to give misleading testimony.  Ex. J.  ("I just don't believe Agent Brown
3  decided to go and lie at a hearing").  Instead, Mr. Kelley again contends that the
4  testimony was "reckless."  Dkt. 388 at 20.  This is fatal to defendant's motion, as
5  unintentional false inaccurate testimony is no basis for a motion to dismiss.  *Levine*, 700
6  F.2d at 1180; *Tham*, 665 F.2d 863.

7      Further, even if reckless conduct was sufficient to support a motion to dismiss, SA
8  Brown's testimony was not reckless in the least.  SA Brown spoke, the day before his
9  testimony, with a witness with direct knowledge of the use of the settlement proceeds,
10 and questioned him about this issue.  He carefully documented the interview, and he
11 repeated to the grand jury what he had been told.  Unfortunately, SA Brown came away
12 from the interview with an inaccurate understanding of this issue.  Whether this
13 misunderstanding was the product of an innocent miscommunication, or, as defendant
14 contends, a deliberate attempt by the witness to mislead SA Brown, it does not amount to
15 reckless misconduct by SA Brown.

16     **3.     The Prosecutor Did Not Act in Bad Faith.**

17     In addition, the prosecutor did not act in bad faith with respect to the testimony
18 about the settlement proceeds.  SA Brown's memorandum of interview stated that the
19 settlement proceeds had been distributed to borrowers, and the prosecutors were not
20 aware of any contrary evidence.  The prosecutor did not learn that part of the money had
21 been used to pay attorney fees until February 2016.  The prosecutor therefore believed
22 the testimony was accurate.

23     Further, once the prosecutor learned that SA Brown's testimony was inaccurate in
24 this one respect, the government promptly disclosed the new information to the defense.
25 The prosecutors believed it unnecessary to inform the grand jury of this new information
26 because, as discussed below, it is not material.  Significantly, too, defense counsel never

27
28

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 13

suggested prior to trial that the government should provide this new information to the grand jury.[1]

### 4.      The Use of Settlement Proceeds Was Immaterial.

Old Republic's use of the settlement proceeds is irrelevant to Troy Kelley's guilt or innocence.  Old Republic and Troy Kelley settled their lawsuit in May 2011—approximately *five years after* Troy Kelley stole the money at issue.  *Old Republic's* after-the-fact business decision to apply the settlement proceeds to cover the legal costs of recovering that settlement has no bearing on whether *defendant* stole the funds in the first place, five years earlier.  Rather, the defense's focus on this issue at trial was, again, an effort to obtain jury nullification by "dirtying up" one of the organizations that Mr. Kelley lied to.  The defense's improper attempt to sway the jury on this issue does not render the evidence material.

## C.      The Spreadsheet Testimony Does Not Warrant Dismissal.

### 1.      Relevant Background

Finally, defendant contends SA Brown testified falsely about the transmittal of an Excel spreadsheet (Plaintiff's Exhibit 436) from PCD to Old Republic.  Defendant claims SA Brown incorrectly told the grand jury that either Troy Kelley or PCD employee Jason Jerue emailed Exhibit 436 to Old Republic.  However, as discussed below, SA Brown's testimony was factually correct and supported by SA Brown's investigation.

The testimony at issue concerns an Excel spreadsheet that PCD used to track reconveyances, and reconveyance funds, of Old Republic customers.  Numerous witnesses testified at trial that PCD maintained such tracking spreadsheets for the escrow companies it worked for, and various versions of PCD tracking spreadsheets were admitted into evidence.  *E.g.*, Plaintiffs' Exhibits 328, 329, 334, 438.

---

[1] The grand jury's term expired on February 4, 2016—before the government learned the new information. However, the grand jury did meet for extension sessions through August 2, 2016.

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 14

1    During a March 12, 2015, interview, former PCD employee Jason Jerue told SA

2    Brown that Mr. Kelley had directed Mr. Jerue to alter the Old Republic tracking

3    spreadsheet to make it appear that PCD was refunding excess reconveyance fees to

4    borrowers.  Specifically, Mr. Jerue told SA Brown that "on at least one occasion, Kelley

5    called Jerue asking him to alter the Old Republic tracking spreadsheet and send it [Old

6    Republic employees] to Laveck and/or Summers." Ex. K at 7.  Mr. Jerue further told SA

7    Brown that Mr. Kelley asked Mr. Jerue to "zero out the balances so that it appeared that

8    all of the funds on file for Old Republic customers, *i.e.,* funds collected in excess of

9    PCD's tracking fee, were disbursed, and no longer being held by PCD." *Id.*  Mr. Jerue

10   also told SA Brown that "*Jerue sent the zeroed out spreadsheet to Laveck and Kelley.*"

11   *Id.* (emphasis added).

12        The government reviewed the tracking spreadsheets it had previously received

13   from Old Republic's outside counsel, Riddell Williams.  One of the spreadsheets (which

14   was later marked as Trial Exhibit 436) matched Mr. Jerue's description.  Riddell

15   Williams later provided the government with an email in which Old Republic's Patty

16   Laveck had transmitted the spreadsheet to Riddell Williams.  Ex. L.

17        In a March 31, 2015 follow-up interview, the government showed Exhibit 436 to

18   Mr. Jerue.  Mr. Jerue confirmed for SA Brown that "this was an example of the zeroed

19   out spreadsheet he had previously described," and further stated that "Patty Laveck's

20   suspicions . . . precipitated a request for the zeroed-out spreadsheet." Ex. M at 2.

21        Mr. Jerue testified to the grand jury on April 1, 2015.  Mr. Jerue testified,

22   consistent with his prior statements, that Mr. Kelley had asked Mr. Jerue to alter the Old

23   Republic tracking spreadsheet. Ex. N at 2.  When asked what he did with the

24   spreadsheet, Mr. Jerue stated that he sent the spreadsheet to Mr. Kelley.  Ex. O.

25   However, inconsistent with his prior statement to SA Brown (in which he recalled

26   sending the spreadsheet to Old Republic's Patty Leveck), Mr. Jerue stated that he did not

27   know if the spreadsheet was transmitted to Old Republic.  *Id.*

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

SA Brown testified to the grand jury the following day.  SA Brown testified that Exhibit 436 "was a spreadsheet that *Troy Kelley or Jason Jerue* had emailed an employee at Old Republic."  Ex. P at 2  (emphasis added).  SA Brown clarified that the exhibit "is not a spreadsheet that was in fact recovered from Mr. Kelley's business or Mr. Kelley himself."  *Id.*  Rather, "the spreadsheet came from Old Republic, one of Mr. Kelley's clients."  *Id.* at 3.

### 2.    The Testimony Was Not False, and Certainly Not Perjury.

As with each of the previous areas of testimony, defendant does not contend SA Brown intentionally provided false information to the grand jury.  Thus, even if SA Brown's testimony is inaccurate (and as explained below, it was not), it would not warrant dismissal.  *Levine*, 700 F.2d at 1180; *Tham*, 665 F.2d 863.

Further, contrary to defendant's assertions, SA Brown's testimony was accurate, and based on what he had been told by the witness and corroborated by the documents.  As recorded in SA Brown's memorandum, Mr. Jerue initially told SA Brown that Mr. Jerue had personally emailed the spreadsheet to Mr. Kelley *and* to Old Republic's Patty Laveck.  Ex. K.  Mr. Jerue later told the grand jury that he sent the spreadsheet only to Mr. Kelley (and not directly to Old Republic).  Ex. N.  It is clear that either Mr. Kelley or Mr. Jerue *must* have sent the spreadsheet to Old Republic because Old Republic received it (and later sent it to Riddell Williams), and because the entire reason for falsifying the spreadsheet was to provide it to Old Republic.  In addition, as explained in more detail in a previous government filing, the spreadsheet contained information (check numbers and payment amounts) known only to PCD, and therefore must have originated there.  Dkt 264 (Gov. Submission re Admissibility of Exhibit 436) at 3.  Thus, the only question is whether (a) Mr. Jerue sent the spreadsheet directly to Old Republic (as Mr. Jerue told SA Brown); or (b) Mr. Jerue sent it to Mr. Kelley to forward to forward to Old Republic (as Mr. Jerue told the grand jury).  SA Brown thus testified accurately when he stated that *either* Mr. Kelley *or* Mr. Jerue sent the spreadsheet to Old Republic.

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 16

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### 3.     The Prosecutors Did Not Act In Bad Faith.

The prosecutors did not act in bad faith with respect to the grand jury testimony about Plaintiff's Exhibit 436.  As described in the previous section, SA Brown's testimony was consistent with the evidence, and there is no evidence of any intent to mislead the grand jury.  Further, as noted above, the day before SA Brown testified, the prosecutor elicited testimony from Mr. Jerue that Mr. Jerue did not recall sending the spreadsheet to Old Republic.  If the prosecutor had intended to mislead the jury on this fact, he would not have elicited this testimony from Mr. Jerue.

The defense makes much of the fact that Riddell Williams produced two different versions of the spreadsheet that was marked as Exhibit 436.  However, Rich Conte, the defense witness called to testify about this issue, admitted that the content of the two versions was identical.  Ex Q.  Defendant also complains about the absence of usable metadata in the native Excel files.  The government had nothing to do with the condition of the metadata, which was turned over to the defense in the same condition that the government received it.  Furthermore, while it is true that one of the two spreadsheets contained no usable metadata, the metadata for the other version reflects that the author of the document was PCD, which is consistent with SA Brown's testimony that the document was prepared by Mr. Jerue.

### 4.     It is Immaterial Who Transmitted Exhibit 436 to Old Republic.

Finally, SA Brown's testimony about the transmission of Exhibit 436 was not material.  The significance of Exhibit 436 is that it shows Mr. Kelley's intent to defraud Old Republic.  That is, the fact that Mr. Kelley *instructed* Mr. Jerue to alter the data is evidence that defendant was trying to hide his true business practices from Old Republic.  Thus, the material evidence relating to this document are (1) Mr. Jerue's testimony that Mr. Kelley told him to create the document; and (2) the existence of the document itself, and; (3) the fact that it was provided to Old Republic by someone, which corroborate Mr. Jerue's testimony.  It is not material *who* actually transmitted the document to Old

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 17

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Republic.  The spreadsheet is evidence of Mr. Kelley's fraud regardless of who transmitted it to Old Republic.

**D.      There is No Basis to Require Production of the Requested Grand Jury Material.**

**1.      Defendant Must Show That: (1) Grounds May Exist to Dismiss the Indictment; and (2) a Particularized Need Exists for Disclosure of Grand Jury Material.**

Defendant's request for the grand jury material is controlled by Federal Rule of Criminal Procedure 6(e).  Rule 6(e) prohibits the disclosure of grand jury material except under certain enumerated exceptions.  Defendant bases his motion on one of these exceptions, Rule 6(e)(3)(E)(ii), which authorizes disclosure of grand jury materials if the defendant shows that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Dkt. 388 p. 24.  Thus, to obtain the grand jury colloquy or instructions, defendant must first establish that the material may support a motion to dismiss the indictment.

In addition, as with any motion for grand jury materials, defendant must show a "particularized need" for the materials.  *Douglas Oil Co. v. Petrol Stops*, 441 U.S. 211, 222 (1979).  The need must be "compelling" enough to "outweigh the policy of grand jury secrecy."  *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987).  "Speculation cannot justify [a] court's intervention into the grand jury's proceedings."  *Id.*

Defendant contends that the "particularized need" requirement does not apply to the prosecutor's instructions to the grand jury.  Dkt. 388 at 24.  But Rule 6(e) covers all "matter[s] occurring before the grand jury," and nothing in Rule 6(e) suggests that prosecutor's instructions should be treated any differently than any other grand jury material.

Defendant cites a single appellate decision for the proposition that a showing of particularized need is not required to obtain grand jury instructions.  *United States v.*

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 18

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    *Alter,* 482 F.2d 1016, 1029 n.21 (9th Cir. 1973).  *Alter* does not support this position.  In

2    *Alter*, the court stated in dicta that the defendant was entitled to know the *court's* charges

3    to the grand jury concerning the general "ground rules" of grand jury proceedings.  *Id.*

4    However, *Alter* said nothing about the distinct issue of disclosing the *prosecutor's*

5    instructions to the grand jury in a particular case.  *Id.*  A *court's* grand jury charges are

6    very different from the prosecutor's grand jury instructions.  The court's charges do not

7    relate to any particular matter; rather, they address ground rules such as how many grand

8    jurors are necessary for a quorum.  By contrast, a *prosecutor's* instructions involve the

9    application of the law to a particular matter under investigation, and therefore plainly fall

10   within Rule 6(e)'s prohibition on disclosing "matters" occurring before the grand jury.

11   *Id.*  As *Alter* itself recognized, "the proceedings before the grand jury are secret." *Id.*

12   (distinguishing between matters occurring before grand jury, which are secret, and "the

13   ground rules by which the grand jury conducts those proceedings, which are not"); *see*

14   *also United States v. Morales,* 2007 WL 628678 at *4 (E.D. Cal. Feb. 28, 2007) (denying

15   request for prosecutor's instructions; *Alter's* statement that the court's charges are not

16   secret "provides little support for defendant's claim that the prosecutor's legal

17   instructions are similarly not covered by secrecy").

18   **2.    Defendant Has Not Satisfied Rule 6(e)'s Requirements for Disclosure of**
19   **Grand Jury Instructions.**

20          As discussed above, defendant must establish that (1) grounds may exist to

21   dismiss the indictment; and (2) he has a particularized need for the materials in order to

22   make that showing.  Defendant cannot make either showing with respect to the grand jury

23   instructions.

24          As an initial matter, the instructions cannot provide a basis to dismiss the

25   indictment, even if they were erroneous.  The prosecutor is under no obligation to provide

26   legal instructions to the grand jury at all.  *United States v. Kenney,* 645 F.2d 1323, 1347

27   (9th Cir. 1981) (finding "no authority" requiring the prosecutor to instruct, and criticizing

28   the notion of "protracted review of [instructions'] adequacy and correctness by the trial

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 19

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   court on a motion to dismiss"). Further, "erroneous grand jury instructions do not

2   automatically invalidate an otherwise proper grand jury indictment." *United States v.*

3   *Wright*, 667 F.2d 793, 796 (1982). Rather, the record must show that the "conduct of the

4   "prosecuting attorney was flagrant to the point that the grand jury was deceived in some

5   significant way." *Id.* And, the defendant must demonstrate that the "erroneous

6   instructions influenced the decision to indict or created a grave doubt that the decision to

7   indict was free from the substantial influence of such a violation." *United States v.*

8   *Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989).

9       Here, even if the instructions were "flagrantly" erroneous, defendant could not

10   prevail on a motion to dismiss. If the Court found the instructions "flagrantly" erroneous,

11   it would then ask whether this affected the indictment, that is, whether the grand jury

12   would have found probable cause to indict if it had been instructed properly. *Id.* The

13   Court has effectively already answered that question. In denying defendant's Rule 29

14   Motion, the Court explicitly found that, under the correct legal instruction, there was

15   "ample evidence" for a unanimous jury to convict defendant on a *reasonable doubt*

16   standard. Given this finding, the Court would surely find that the evidence was sufficient

17   for 12 grand jurors to return an indictment under the much lower *probable cause*

18   standard. As a result, defendant cannot show that "a ground may exist to dismiss the

19   indictment," and he is not entitled to relief under Rule 6(e)(3)(E)(ii).

20       Second, defendant fails to show a particularized need for the instructions. Nothing

21   in defendant's motion establishes a probability that the government misinstructed the

22   grand jury on the law. Defendant argues that the government's theory of the case

23   changed over time. As explained in the government's response to defendant's Motion for

24   Bill of Particulars, this is simply not true—the government's theory has remained

25   consistent throughout the prosecution. In any case, even if the government's *theory*

26   changed over time, it would not follow that the government provided the grand jury with

27   erroneous *legal instructions*—much less the "flagrantly" erroneous instructions necessary

28   to support dismissal. *Wright*, 667 F.2d at 796.

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 20

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Ultimately, defendant's argument boils down to complete speculation: "it is hard

2  to tell without the colloquies or instructions, exactly what the grand jury was told about

3  the theory, it simply cannot have been the theory on which the government sought

4  conviction." Dkt. 388 at 18.  This is exactly the type of speculation that the Ninth Circuit

5  rejected in *DeTar*. 832 F.2d at 1113 ("it is not sufficient for DeTar to assert that he has no

6  way of knowing whether prosecutorial misconduct occurred.").

7  **3.    Defendant Has Not Satisfied Rule 6(e)'s Requirements for Disclosure of**

8  **      Grand Jury Colloquies.**

9    Defendant requests not only the government's legal instructions, but also any

10  colloquies with the grand jury.  Defendant appears to concede that he must establish

11  particularized need for these grand jury materials.

12    Defendant identifies no valid basis on which the colloquies could support

13  dismissal.  Defendant argues that the colloquies could establish that the grand jury

14  "indicted under a stolen property theory other than the one that was presented to the petit

15  jury." Dkt. 388 at 25.  The argument appears to be that defendant could obtain dismissal

16  based on a variance or constructive amendment theory.  However, defendant cannot

17  obtain relief on this basis before he is convicted.  A variance or a constructive

18  amendment occurs when there is a difference between the crime charged in the

19  indictment and the crime for which the defendant was *convicted* at *trial*.  Any motion

20  asserting a variance or constructive amendment would need to establish that the evidence

21  resulting in the conviction (the evidence presented at the *second* trial) was inconsistent

22  with the indictment.  Here, the second trial has not yet occurred, and defendant has not

23  yet been convicted.  Accordingly, any motion to dismiss on this basis (and any discovery

24  in support of it) is premature.

25    Second, defendant's rationale for obtaining the colloquies is wholly speculative

26  and vague, and therefore fails to establish particularized need.  Defendant has no basis to

27  assert that anything improper (much less flagrantly improper) was said during any

28  colloquy with the grand jury.  Rather, defendant simply argues that "colloquies between

RESPONSE TO MOTION TO DISMISS
U.S. v. Kelley, CR15-5198RBL - 21

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  prosecutors *may* shed further light on the issues the grand jury faced in deciding to

2  indict." Dkt. 388.  As with the request for instructions, this is the type of speculation the

3  Ninth Circuit found insufficient in *DeTar*.  The Court should reject defendant's request

4  for the colloquies.

**IV.    CONCLUSION**

6      Defendant's Motion to Dismiss for Grand Jury Abuse and to Compel Discovery

7  should be denied.

9      DATED September 14, 2017.

11                                        Respectfully submitted,

12                                        ANNETTE L. HAYES
                                          United States Attorney

14                                        *s/ Seth Wilkinson*
                                          _____
15                                        ARLEN R. STORM
                                          ANDREW C. FRIEDMAN
16                                        SETH WILKINSON
                                          Assistant United States Attorneys
17                                        700 Stewart Street, Suite 5220
18                                        Seattle, Washington  98101-1271
                                          Telephone:  (206) 553-7970
19                                        Fax:  (206) 553-0755
20                                        E-mail:  Arlen.Storm@usdoj.gov
                                          Andrew.Friedman@usdoj.gov
21                                        Seth.Wilkinson@usdoj.gov

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 22

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on September 14, 2017, I electronically filed the foregoing with

3

the Clerk of the Court using the CM/ECF system which will send notification of such

4

filing to the attorney(s) of record for the defendant(s).

5

6

7

                         *s/ Kylie Noble*

8

                         KYLIE NOBLE

9

                         Legal Assistant

                         United States Attorney's Office

10

                         700 Stewart Street, Suite 5220

11

                         Seattle, WA 98101-3903

                         Telephone: (206) 553-2520

12

                         Fax: (206) 553-4440

13

                         E-mail: kylie.noble@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RESPONSE TO MOTION TO DISMISS**
U.S. v. Kelley, CR15-5198RBL - 23