The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>TROY X. KELLEY,<br><br>    Defendant. | NO. CR15-5198RBL<br><br>**MOTION FOR DISCOVERY SANCTIONS**<br><br>Noting Date:  November 20, 2017 |

## I.    INTRODUCTION

During his cross examination of Julie Yates, defense counsel produced, for the first time, a document purporting to be a January 12, 2004, email from Troy Kelley to Julie Yates.  *See* Ex. A-529.  As discussed herein, the defense's handling of this email was a violation of Rule 16 and highly prejudicial to the government.  In addition, the government has not been able to confirm the authenticity of the document, and defense counsel has refused to disclose its source, the circumstances of its discovery, or allow the government to inspect the original document.

Rule 16 requires the defense to produce all documents it intends to offer as part of its "case-in-chief."  The vast majority of courts, including three district courts in the Ninth Circuit, have held that a document is used as part of the defendant's "case-in-chief" if it is offered as substantive evidence on cross examination, as defense counsel did here. Indeed, in a case involving present defense counsel, Judge Winmill of the District of

1 | Idaho held that Rule 16 requires the defendant to produce all evidence it intends to offer
2 | for non-impeachment purposes "both during and after the government's case," and
3 | further held that defense counsel "unreasonably" failed to produce evidence it intended to
4 | use in cross examination. *United States v. Swenson*, 298 F.R.D. 474, 477 (D. Idaho
5 | 2014).

6 | Defendant's discovery violation seriously affected the government's ability to
7 | evaluate the authenticity of the document at the time it was offered.  When defendant
8 | offered the email, the government believed, based on the fact that defendant had not
9 | previously produced the email, that the email must have been one of the thousands of
10 | emails Fidelity has produced over the last month.  But the government has now
11 | determined that the document did *not* originate from Fidelity.

12 | The only other possible source of the email, if it is authentic, is Troy Kelley.  But
13 | Troy Kelley has testified under oath that previously were lost or destroyed, and he did not
14 | produce this document either in litigation with Old Republic or at any time during his
15 | first trial.  Other facts raise additional questions about the document's authenticity:  Julie
16 | Yates testified that she did not recognize the pertinent portion of the email; the email
17 | does not appear to be a complete document; its appearance does not resemble the emails
18 | produced by Fidelity; and the charges in this case include an allegation that Kelley
19 | previously has forged other documents.  In addition, the defense has refused to provide
20 | any explanation for this document's mysterious sudden appearance.

21 | Based on these facts, the government now seeks relief from the Court.
22 | Specifically, the government requests that the Court order that:  (1) the exhibit be stricken
23 | from evidence and that further questions or argument about it be excluded; (2) defendant
24 | produce the original document for inspection; (3) counsel provide an explanation for the
25 | sudden appearance of the document; and (4) defendant not be permitted to offer
26 | additional exhibits that were not provided to the government in discovery.

27 |
28 |

**MOTION FOR DISCOVERY SANCTIONS**
U.S. v. Kelley, CR15-5198RBL - 2

## II.   BACKGROUND

**A.   Troy Kelley Repeatedly Has Asserted That He Has No PCD Emails.**

In 2009, Old Republic sued Kelley, alleging that Kelley had failed to refund unused monies to borrowers.  During that litigation, Kelley consistently took the position that he had no records remaining relating to Post Closing Department.  For example, on October 31, 2008, Kelley's then-counsel wrote to plaintiff's counsel that

> Mr. Kelley was ready to attend the deposition set for today and to bring with him all documents responsive to the subpoena *duces tecum* that were not destroyed in the June 26, 2008 fire.  That fire destroyed the Stewart Title Building in Everett where Mr. Kelley ran the business relevant to this litigation.  My understanding is that the only surviving records are tax returns, which Mr. Kelley had at his home office.

In 2010, as part of the litigation, Kelley was deposed.  During his deposition, Kelley was asked what documents he had relating to Post Closing Department.  Kelley testified that most of Post Closing Department's documents had been destroyed in the 2008 Stewart Title fire.  Kelley testified that other records had been lost when his own computer failed more than a year earlier, that the computer no longer would even turn on, and that Kelley subsequently gave it to Goodwill.  Kelley also testified that his counsel's claim that the only surviving records were tax records was true, except that Kelley had found "business cards and a few other things."

During the deposition, Kelley was asked specifically about Post Closing Department's emails.  Kelley stated that he no longer had any such emails, because the emails had been deleted when Post Closing Department turned off its web page after the company closed in June 2008.  Kelley also testified that he did not have Post Closing Department's emails backed up in any other way.  Kelley testified that he did not realize that turning off the web page would result in the loss of the emails, and that he did not learn this until he tried to get the emails several months later.  Kelley testified that he

MOTION FOR DISCOVERY SANCTIONS
U.S. v. Kelley, CR15-5198RBL - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

believed he had discussed additional fees with Yates in emails early in the PCD-Fidelity relationship.

Jason Jerue, one of Kelley's employees at Post Closing Department, since has testified that Post Closing Department did have records that were not destroyed in the fire at Stewart Title or otherwise inadvertently lost.  Specifically, Jerue testified that Kelley kept business documents at Kelley's own residence.  Jerue also testified that Jerue himself had both electronic and paper records when Post Closing Department closed. Jerue testified that he asked Kelley what to do with these records and that Kelley instructed him to "dump" or "get rid of" the records.  Jerue testified that he did as instructed.

**B.      The Government Searched Troy Kelley's Residence and Found No Emails.**

In February 2015, the government obtained a search warrant to search Kelley's residence.  The warrant authorized seizure of both hard copy and electronic materials.

Because Kelley previously had testified that he no longer had any business records relating to Post Closing Department, the search warrant was focused on evidence of tax fraud, in violation of 26 United States Code § 7206, for the years 2011 and 2012 (when Kelley had claimed what appeared to be fraudulent business deductions) that were likely to be at Kelley's residence.  Thus, the warrant authorized the seizure of tax records, bookkeeping and financial records, and contracts, agreements, invoices, bills, loan documents, leases, rental agreements, engagement letters, business, proposals, business advertisements, and client lists evidencing business activity, for the tax years 2006 through 2013, including records relating to United National, LLC (the formal corporate name of Post Closing Department).

The search resulted in the seizure of various Post Closing Department-related hard copy materials, but it resulted in the seizure of few if any printouts of emails, and it did not retrieve a printout of Exhibit A-529.  The search of Kelley's computers did not result

**MOTION FOR DISCOVERY SANCTIONS**
U.S. v. Kelley, CR15-5198RBL - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  in the seizure of any emails to or from Post Closing Department, and, specifically, did not

2  retrieve an electronic copy of Exhibit A-529.

3  **C.     The Email Did Not Originate From Fidelity**

4         During the initial criminal investigation, the government subpoenaed Fidelity

5  National Financial (the parent company of Fidelity) for records, including emails between

6  Fidelity and Post Closing Department.  Fidelity National Financial produced emails from

7  February 2, 2006, through January 8, 2009.  Fidelity National Financial, through counsel,

8  informed the Government that any earlier emails were "irretrievable."  The Government

9  produced the emails that it did receive to Kelley as part of discovery in this case.

10        As the Court is aware, on the eve of the first trial, the government learned that

11  Fidelity in fact had a backup tape system going back before 2006.  Retrieving the emails

12  would have been enormously time consuming and expensive, however, and could not

13  have been achieved before the first trial.  In preparation for second trial, the government

14  re-initiated discussions with Fidelity about retrieving the emails.  Fidelity IT personnel

15  ultimately located a 2003 year-end backup tape that containing Julie Yates' email.

16  Fidelity also located partial 2004 and 2006 year-end backup tapes that did not contain

17  email of Julie Yates.

18        After learning of the available backup tapes, both parties sent subpoenas to

19  Fidelity seeking additional emails.  As a result, Fidelity produced thousands of pages of

20  emails over the period between October 20, 2017, and November 13, 2017.  Exhibit

21  A-529 was not among these emails.  Indeed, Fidelity was able to retrieve emails from

22  Julie Yates only for the period ending January 1, 2004.  As noted above, Exhibit A-529

23  has a date of January 12, 2004.

24  **D.     Counsel's Handling of the Email**

25        Defendant did not use Exhibit A-529 during the first trial, and never produced it in

26  discovery.  The first time counsel provided the government a copy of the email was

27  simultaneously with his presentation of the email to Julie Yates on Wednesday,

28

**MOTION FOR DISCOVERY SANCTIONS**
U.S. v. Kelley, CR15-5198RBL - 5

1  November 15.  Counsel offered the exhibit into evidence.  While the AUSAs had never

2  seen the email before, they assumed that it must have originated from Fidelity, which had

3  produced its most recent batch of emails two nights before.  Accordingly, the AUSAs did

4  not believe there was a basis to question the authenticity of the document, and did not

5  object to it.

6         Before counsel offered Exhibit A-529, Yates testified that she did not remember

7  receiving any email from Troy Kelley discussing additional fees.  Exhibit A-529,

8  however, purports to be an email in which Kelley states that he wants to "test" a $5

9  incentive payment for his employees.  Ms. Yates's response to the email does not make

10  any reference or response to this comment.

11        When presented with the document, Exhibit A-529, Yates testified that the email

12  made "no sense" and that the email did <u>not</u> look like an email Mr. Kelley sent her.  Ms.

13  Yates also testified that the date on the email did not appear to be consistent with the

14  items discussed within it.  The day after Yates testified, two former Post Closing

15  Department employees, Sharron Airey and De Lamb, testified that Post Closing

16  Department never offered them any "incentive" payment.  Exhibit A-529 is also

17  inconsistent with other documents in the case, such as a February 2006 email in which

18  Kelley confirmed to Yates that his fee remained $15.  *See* Ex. 303.

19  **E.    Counsel Refused to Disclose the Source of the Email or Allow the**
20  **       Government to Inspect it.**

21        On November 16 and 17, the government searched Fidelity's email productions,

22  as well as other sources of evidence, in an effort to determine the source of Exhibit

23  A-529.  After determining that the exhibit had not been produced by any party in

24  discovery, the AUSAs wrote defense counsel a letter raising the government's concerns

25  about the document.  Ex. A.  The government requested that counsel produce the original

26  document for inspection and explain the source of the document and the circumstances

27  and date of its discovery.  The government also stated its intent to object to the

28  introduction of any further documents not produced in discovery.

MOTION FOR DISCOVERY SANCTIONS
U.S. v. Kelley, CR15-5198RBL - 6

Defense counsel responded to the letter on November 18.  Ex. B.  Counsel refused to make the document available for inspection, and further refused to provide any information about the discovery of the document.  Further, counsel argued in the letter that defendant was not required to produce the email because it was used only for "impeachment"—even though defendant offered the document into evidence, and later used it to question Tami Henderson, a witness who was not a party to the email.

## III.    DISCUSSION

### A.    Rule 16 Requires Pretrial Production of all Substantive Evidence.

The Court ordered the parties to exchange discovery on December 18, 2015, with ongoing disclosure obligations.  Dkt. 62 at 2.  Under Rule 16, a defendant is required to "permit the government to inspect and copy" any documents within the defendant's control if "the defendant intends to use the item in the defendant's case in chief at trial." Fed. R. Crim. P. 16(b)(1)(A).  Rule 16(d) provides that, if a party fails to comply with Rule 16, the Court may exclude the undisclosed evidence; may "permit the discovery or inspection" and "prescribe other just terms and conditions"; or may "enter any other order that is just under the circumstances."

Some defense counsel, including present counsel, have taken the position that Rule 16 does not require production of documents the defense intends to use in cross examination.  Numerous courts have rejected this argument, recognizing that this would render Rule 16(b) meaningless because most defendants offer a large share of their substantive evidence through cross examination of government witnesses.  For example, in *Swenson*, a case involving present defense counsel, Judge Winmill noted that, "when cross examining a government witness, a defendant is asserting the defense that the government cannot prove the elements of the crime charged and thus is required to disclose any evidence it seeks to use to establish the failure of proof."  *Swenson,* 298 F.R.D. at 476-477.  "To hold otherwise would effectively render Rule 16(b) a nullity . . . ."  *Id.*  Thus, the court found that counsel had an obligation to "produce any exhibits

MOTION FOR DISCOVERY SANCTIONS
U.S. v. Kelley, CR15-5198RBL - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  they intend to use at trial during cross examination of a government witness other than

2  for impeachment purposes." *Id.*

3        Numerous other courts have reached the same conclusion. *United States v. Young*,

4  248 F.3d 260, 261 (4th Cir. 2001) (all defense evidence except impeachment material is

5  "evidence in chief" under Rule 16); *United States v. Aiyaswamy*, 2017 WL 1365228 at

6  *11-14 (N.D. Cal. Apr. 14, 2017) (collecting cases holding that defendant must disclose

7  cross-examination evidence, and ordering that "defendant must disclose and produce

8  substantive, non-impeachment evidence under Rule 16(b), whether defendant plans to

9  introduce that evidence during cross-examination or after the Government rests," and

10  stating that "a defendant's introduction of evidence by surprise at trial may require

11  exclusion of that evidence"); *United States v. Holden*, 2015 WL 1514569 at *4 (D. Or.

12  Mar. 9, 2015) (defendant required to produce non-impeachment cross-examination

13  materials; "this approach is more consistent with the realities of modern trial practice . . .

14  and the structure and integrity of Rule 16(b) as a whole"); *United States v. Hsia*, 2000

15  WL 195067 at *6 (D.D.C. Jan. 21, 2000) (Rule 16 applies to cross examination materials;

16  "the cross-examination of government witnesses is properly seen as part of the

17  defendant's case-in-chief if it buttresses her theory of the case").[1]

18  **B.    Counsel Used Exhibit A-529 for Non-Impeachment Purposes**

19        Counsel claims that Exhibit A-529 was intended only for impeachment purposes.

20  While the email may have been *partially* used as impeachment, it is clearly *also* (and

21  primarily) intended as substantive evidence, and therefore is discoverable under the cases

22  cited above.  The email goes directly to the contested substantive issue of what fees PCD

23  was permitted to charge Fidelity customers.  The fact that this is not only impeachment is

24  also demonstrated by the fact that counsel used the email when questioning another

25  witness, Tami Henderson, about following day.  Counsel undoubtedly will argue to the

26

27  ───────────────

28  [1] The only case of which the government is aware to hold to the contrary is *United States v. Harry*, No. 2014 WL 6065705 (D.N.M. Oct. 14, 2014).

**MOTION FOR DISCOVERY SANCTIONS**
U.S. v. Kelley, CR15-5198RBL - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

jury, if allowed to do so, that the email shows that PCD was allowed to charge an additional $5 fee.

**C.      The Discovery Violation Was Highly Prejudicial to the Government**

This is an egregious discovery violation.  It was an effort to surprise an opposing party in exactly the manner Rule 16 is designed to prevent.  The violation was also highly prejudicial.  By holding the email back, defendant prevented the government from investigating the email's authenticity, and from asking Julie Yates about it prior to trial. This is particularly prejudicial, given the reasons to question the email's authenticity. There should be serious consequences for this violation, particularly because another federal judge has already ruled, in a case involving the same defense attorney, that this discovery practice is unacceptable.

Accordingly, the government respectfully requests the following relief, which is necessary to remediate the government's prejudice and to allow the government to investigate the authenticity of the email:

1. An order striking Exhibit A-529 from evidence and prohibiting any further mention of the exhibit; in the alternative, if the Court is not inclined to strike the exhibit, the government requests an order providing that Exhibit A-529 has been admitted for impeachment purposes only and prohibiting any conduct by counsel inconsistent with that order (which would, of course, include a prohibition on using the exhibit with any witness other Julie Yates, and which Kelley presumably could not oppose given his position that the document is not substantive evidence subject to discovery);

2. An order directing defendant to make the original version (presumably, in its electronic form) of Exhibit A-529 available for inspection;

3. An order directing the defense to disclose the circumstances surrounding the discovery of the document; and

**MOTION FOR DISCOVERY SANCTIONS**
U.S. v. Kelley, CR15-5198RBL - 9

4.  An order providing that further undisclosed materials, other than impeachment materials, will not be admitted into evidence.

DATED this 19th day of November, 2017.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*s/ Seth Wilkinson*
ARLEN R. STORM
ANDREW C. FRIEDMAN
SETH WILKINSON
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington  98101-1271
Telephone:  (206) 553-7970
Fax:  (206) 553-0755
E-mail:  Arlen.Storm@usdoj.gov
Andrew.Friedman@usdoj.gov
Seth.Wilkinson@usdoj.gov

**MOTION FOR DISCOVERY SANCTIONS**
U.S. v. Kelley, CR15-5198RBL - 10

1

2

**CERTIFICATE OF SERVICE**

3       I hereby certify that on November 19, 2017, I electronically filed the foregoing

4   with the Clerk of the Court using the CM/ECF system which will send notification of

5   such filing to the attorney(s) of record for the defendant(s).

6

7

8                                        *s/ Andrew C. Friedman*
                                          ANDREW C. FRIEDMAN
9                                         Assistant United States Attorney

10
                                          United States Attorney's Office
11                                        700 Stewart Street, Suite 5220
                                          Seattle, WA 98101-3903
12                                        Telephone:   (206) 553-2277
                                          Fax:         (206) 553-0882
13                                        E-mail:      Andrew.Friedman@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR DISCOVERY SANCTIONS**
U.S. v. Kelley, CR15-5198RBL - 11