# CALFO EAKES & OSTROVSKY PLLC

Attorneys at Law
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101-3808
www.calfoeakes.com

Angelo J. Calfo

Email: angeloc@calfoeakes.com
Direct: (206) 407-2210
Fax: (206) 407-2224

November 18, 2017

**VIA EMAIL ONLY**

Andrew Friedman
Seth Wilkinson
United States Attorney's Office
700 Stewart St, Suite 5220
Seattle, WA 98101-4438
andrew.friedman@usdoj.gov
seth.wilkinson@usdoj.gov

Arlen Storm
United States Attorney's Office
1201 Pacific Ave, Suite 700
Tacoma, WA 98402-4383
arlen.storm@usdoj.gov

Re: *U.S.A. v. Troy X. Kelley*

Dear Counsel:

I am stunned by Mr. Friedman's correspondence dated yesterday. For one thing, it confirms what has been apparent from the day we appeared in this case—any evidence that supports Mr. Kelley's position or is otherwise favorable to his defense is immediately considered by the prosecution team to be unreliable. Your office is so focused on obtaining a conviction that all inferences from evidence inconsistent with your goal of obtaining a conviction are ignored.

For another, the notion that we have an obligation to disclose impeachment material is completely meritless, and shocking. Contrary to your suggestion, *Aiyaswamy* does not require the defendant to turn over any substantive evidence, but rather any "substantive, **_non-impeachment_** evidence." *United States v. Aiyaswamy*, 15-CR-00568-LHK-1, 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017). Prior inconsistent statements of witnesses are the paradigmatic example of impeachment evidence. Thus, even under the rule of *Aiyaswamy* and similar cases—with which we disagree, and which are not the rule in this District[1]—"the defendant is not required to disclose evidence used to impeach a government witness by, for example, showing a prior inconsistent statement." *United States v. Swenson*, 298 F.R.D. 474,

---

[1] Other district courts have rejected the approach set forth in *Aiyaswamy*. *See, e.g., United States v. Harry*, CR 10-1915 JB, 2014 WL 6065705 (D.N.M. Oct. 14, 2014).

477 (D. Idaho 2014); *see also United States v. Givens*, 767 F.2d 574, 583–84 (9th Cir. 1985) (holding that the government's presentation of independent evidence that was inconsistent with a witness's statement was impeachment evidence). Exhibit A-529 was introduced to show that Ms. Yates was not telling the truth in her testimony, and is therefore quintessential impeachment evidence which the defense is not required to flag for the government before using.

Any order requiring the production of impeachment material would be unconstitutional and would result in reversible error if a defendant was forced to comply and was convicted. *See United States v. Cerro*, 775 F.2d 908, 915 (7th Cir. 1985) ("[A] defendant's interest in being able to conduct a vigorous and effective cross-examination—an interest central to the right of a criminal defendant under the Sixth Amendment 'to be confronted with the witnesses against him,'—would be impaired if he had to give a précis of his cross-examination to the prosecution before trial.") (quoting see, e.g., *Davis v. Alaska,* 415 U.S. 308, 315–16 (1974)); *see also United States v. Medearis*, 380 F.3d 1049, 1057–58 (8th Cir. 2004) (holding that district court abused its discretion in excluding impeachment evidence that the defense had withheld under Rule 16). We have no obligation to make sure your witnesses are aware of evidence inconsistent with their statements.

I note the true irony here: it is abundantly clear that your witness Julie Yates repeatedly gave false testimony this past week. Your office seems completely unconcerned with this fact, and presses forward to support Ms. Yates despite the hard evidence. Ms. Yates' repeated claim under oath that she never even discussed additional fees with Troy is patently false based on the exhibits the prosecution team introduced into evidence. The spreadsheets that Troy sent to Ms. Yates immediately after the relationship additionally corroborate that Troy was authorized to charge such fees, and her claim that she somehow ignored to see what was right in front of her in the spreadsheets is not credible. Finally, Ms. Yates admitted on the witness stand that she received the email we marked as Defense Exhibit A-529—further corroborating the unreliability of her testimony that she never discussed additional fees with Troy. You did not object to the introduction of the exhibit.

Defense Exhibit A-529 is corroborated by other evidence introduced by the government, and is consistent with Ms. Yates' inherent unreliability as a witness. By way of example, her misuse, and, indeed, theft of customer money by taking reconveyance fees and other monies paid by Fidelity's customers and using that money for Fidelity's own financial benefit reflects her character and her real concerns, which have nothing to do with customer funds.

We suggest you focus on the plank in your own eye before throwing rocks at us. Your office has shown a complete insensitivity to our need to have adequate notice of evidence before trial. Indeed, you and your office participated with Fidelity in dumping hundreds of new exhibits

relevant to this case in the days before and during trial, even though you knew such evidence existed for months before you disclosed it to us. We assume, quite validly, you were waiting to see whether Fidelity's lawyers told you that the "new" evidence corroborated your theory. You opposed our motion for a continuance or to exclude this evidence, claiming no concern at all about our ability to prepare for trial in light of these significant, late disclosures.

Additionally, on Thursday, during Ms. Henderson's testimony, you used an exhibit that was not on your exhibit list in the first or second trial without seeking leave of court or our consent. This was unprofessional and inconsistent with the court's rules. In the future, if you want to introduce a document not on your exhibit list, we ask that you provide us prior notice and allow us an opportunity to take the matter up with the Court.

Moreover, you have repeatedly presented evidence that fits your theory of the case by declining to obtain the complete picture from witnesses over whom you have substantial influence and control and are the purported victims in your prosecution. The failure to investigate prior to indictment what Old Republic did with the money Troy paid in settlement is one example. Your refusal to even determine whether and to what extent Fidelity did not refund customers after taking reconveyance work in-house is another. You allowed Ms. Henderson to testify that refunds were given for a "short time" but refused to investigate whether she was telling the truth, or to get to the truth yourselves. While Ms. Henderson minimized Fidelity's conduct, you have evidence that Fidelity obtained more than $140,000 in reconveyance fees, but you chose not to find out how much of that was refunded even though such information is at your fingertips. You liked the evidence as it was framed so you declined to obtain the truth. The prosecution should not offer evidence it knows or has reason to know is not true. *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009) ("In representing the United States, a federal prosecutor has a special duty not to impede the truth…it is improper for the government to present to the jury statements or inferences it knows to be false or has very strong reason to doubt").

As another example, Mr. Wilkinson's opening statement asserted that Judge Pechman determined on summary judgment in the *Cornelius* litigation that PCD was required to refund under its contract with Fidelity. Any lawyer reading the opinion would know that Mr. Wilkinson's assertion to the jury on this point was false and misleading—she made no such ruling and only suggested that an obligation to refund, if one existed, would have had to come from PCD. Your office also knows from the last trial that Hagens Berman announced to the public after the case was dismissed that it did not believe that title company customers had a credible claim to bring against PCD. Again, your efforts to stretch evidence beyond its reasonable bounds is extremely concerning and a violation of Mr. Kelley's due process rights. *Reyes*, 577 F.3d at 1077.

Thus, rather than being "seriously concerned" about our conduct in discovery, we ask your office to acknowledge and remedy its own misconduct in discovery and during the trial. We are complying with our discovery obligations and your suggestion otherwise lacks any legal basis.

Sincerely,

CALFO EAKES & OSTROVSKY PLLC

Angelo J. Calfo

cc: Patty Eakes
     Emily Powell

AJC:mjk