THE HONORABLE RONALD B. LEIGHTON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br> vs.<br><br>TROY X. KELLEY,<br><br>         Defendant. | Case No. 3:15-cr-05198-RBL<br><br>DEFENDANT TROY KELLEY'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCOVERY SANCTIONS |

## I. INTRODUCTION

The government's Motion for Discovery Sanctions seeks belated exclusion of an exhibit that a government witness authenticated, and as to which the government did not object. The government seeks this order because its witness got caught stretching the truth. After testifying that she had *never* discussed charging additional fees with Defendant Troy X. Kelley, Ms. Yates was shown Exhibit A-529, admitted that she received it, and was impeached by it because it showed that she and Mr. Kelley had, in fact, discussed his charging additional fees. This competent evidence is before the jury and should be left undisturbed.

The government claims that the defense improperly did not disclose Exhibit A-529 as a part of reciprocal discovery and that it should therefore be excluded. According to the government, Mr. Kelley was obligated by Rule 16(b) to disclose his cross-examination exhibits.

DEFENDANT TROY KELLEY'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCOVERY SANCTIONS (NO 3:15-cr-05198-RBL) - 1

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

But by its plain language, Rule 16(b)(1) only requires Mr. Kelley to disclose evidence he "intends to use . . . in [his] case-in-chief at trial." It does not obligate him to disclose evidence he intends to use in cross-examining government witnesses during the government's presentation of its case. The out-of-district cases to the contrary on which the government's argument hinge fail to acknowledge decades of caselaw recognizing that a "case-in-chief" is a discrete phase of trial in which a party introduces evidence. They fail to appreciate that Rule 16 is intentionally lopsided to reflect the parties' unequal burdens—a criminal defendant is not obligated to put on a case at all to prevail. And, by requiring a defendant to tip their hand and thus impairing a defendant's ability to effectively cross-examine witnesses, they run afoul of the Sixth Amendment's guarantee of vigorous and effective cross-examination. The government's position should therefore be rejected.

But even if the Court *were* to follow the cases cited by the government, it still would not be entitled to the relief it seeks. Even the most favorable cases cited by the government are careful to acknowledge that impeachment exhibits—such as Exhibit A-529—are not subject to disclosure under Rule 16(b). And no case supports the additional relief sought by the government—an order requiring the defense to disclose information concerning its discovery of Exhibit A-529—because this is core work product and attorney-client privileged information. The government's motion for discovery sanctions should be denied in its entirety.

## II.   ARGUMENT

### A. Rule 16 Does Not Require a Defendant to Disclose the Documents It Intends to Use in Cross-Examining Government Witnesses.

The government argues that Mr. Kelley should be required to turn over exhibits used in cross-examining government witnesses. Dkt. No. 519 at 7-8. The government has never raised this argument before—despite having years, and an entire previous trial, in which to do so. It only raises this argument now because one of its star witnesses, Julie Yates, was caught giving testimony that was proven to be untrue. Rule 16 does not require a defendant to disclose its

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 2

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

cross-examination exhibits to the government. Requiring a defendant to disclose cross-examination exhibits is inconsistent with the text of the rule, inconsistent with the different roles of the prosecution and defense in the criminal justice system, and raises serious constitutional concerns.

Federal Rule of Criminal Procedure 16(b) provides that, if the defendant elects to obtain discovery from the government pursuant to Rule 16(a), the defendant must reciprocate with discovery of evidence in the "defendant's possession, custody, or control" that the defendant "intends to use" in his "case-in-chief." Fed. R. Crim. P. 16(b)(1)(A). Because a party's "case-in-chief" traditionally refers to the part of trial in which that party elicits testimony, *see, e.g.*, *United States v. Dunnigan*, 507 U.S. 87, 89 (1993); *Walder v. United States*, 347 U.S. 62, 66 (1954), Rule 16(b) has long been understood by practitioners to require only that the defendant disclose evidence it intends to introduce after the government rests, as part of its own case. As the government notes, however, a handful of district courts have recently upset this well-accepted interpretation, and have instead interpreted a defendant's "case-in-chief" to include any non-impeachment evidence the defendant introduces to challenge the government's case, even evidence introduced to cross-examine witnesses. Dkt. No. 519 at 7-8. This approach, though, has never been adopted by this district and, indeed, has been rejected by other district courts. *See United States v. Harry*, CR 10-1915 JB, 2014 WL 6065705, at *6 (D.N.M. Oct. 14, 2014); *United States v. Kubini*, 304 F.R.D. 208, 214-15 (W.D. Pa. 2015).

The first case to take this approach, *United States v. Hsia*, based its holding entirely on the Seventh Edition of Black's Law Dictionary. *United States v. Hsia*, CRIM. 98-0057 (PLF), 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000). As the court reasoned, "[a] 'case-in-chief' is defined as '[t]he part of a trial in which a party presents evidence to support its claim or defense.' Defendant's cross-examination of government witnesses, and the evidence introduced during

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 3

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

that cross-examination, certainly may be used to support her defense." *Id.* (quoting *Black's Law Dictionary* 207 (7th ed.1999)).

This reasoning, however, was thoroughly dismantled by the district court in *United States v. Harry*. As the *Harry* court pointed out, *Hsia* failed to cite a single case interpreting a party's "case-in-chief" to include its cross-examination of opposing witnesses. *Harry*, 2014 WL 6065705, at *7. To the contrary, "[c]ourts have repeatedly used the term case-in-chief to refer to the part of a trial between the time that a party calls its first witness and when it rests." *Id.* at *6 (citing voluminous cases). Moreover, as the *Harry* court noted, "[t]he Seventh Edition, on which Judge Friedman [in *Hsia*] relied, is the only edition that does not define 'case-in-chief' in a way that clearly indicates that the term refers to a specific part of trial—the part in which a party calls witnesses and in which the party rests at the end. The Seventh Edition appears to be an outlier." *Id.* at *9. Thus, concluded the *Harry* court, the well-defined language of Rule 16 counseled against the interpretation the government now urges:

> Because the term case-in-chief has continuously been defined and used in a manner that refers to the part of a trial in which a party calls its first witness until it rests, and because there is no indication that the term was intended to be defined in rule 16(b)(1)(A) in a manner contrary to its traditional definition, the Court concludes that the term "case-in-chief," as rule 16(b)(1)(A) used the phrase, refers to evidence that a party presents between the time that the party calls its first witness and the time the party rests.

*Id.* at *10.[1]

Nonetheless, a handful of courts have followed *Hsia*, grafting questionable policy rationales onto *Hsia's* dubious textualism. For example, in *United States v. Swenson*, the district

---

[1] *United States v. Young*, on which the government relies, interprets an older version of Rule 16, which uses the term "evidence in chief" instead of "case-in-chief." *United States v. Young*, 248 F.3d 260, 269 (4th Cir. 2001) (quoting Fed. R. Crim P. 16 (1997) (amended 2002)). As the Committee's advisory notes to the 2002 Amendments note, the change in the rule from "evidence in chief" to "case-in-chief" may be "substantive in nature." Advisory Committee's Notes Fed. R. Crim. P. 16(b)(1)(B) (2002 Amendments). Indeed, *Young* itself recognizes the difference between "case-in-chief" and "evidence in chief," noting that although the defendant offered the evidence in question "during the government's case-in-chief," he "*intended* to offer the tapes not for impeachment purposes, but as 'evidence in chief.'" *Young*, 248 F.3d at 269 (emphasis in original).

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 4

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

court adopted *Hsia's* reasoning on the quasi-equitable grounds that the parties' discovery obligations should be symmetric, arguing that "[t]o hold otherwise, would effectively render Rule 16(b)(1)(A) a nullity unless a defendant asserted an affirmative defense or planned to put on his or her case after the government rested." *United States v. Swenson*, 298 F.R.D. 474, 477 (D. Idaho 2014). And in *United States v. Holden*, the district court adopted *Hsia* on efficiency grounds, claiming that "the use of evidence by a criminal defendant outside of the scope of traditional cross-examination through one of the government's witnesses is standard modern trial practice in complex cases . . . because it is more efficient, is respectful of the availability of out-of-district witnesses, and presents the evidence to the factfinder in a more streamlined and understandable manner." *United States v. Holden*, 3:13-CR-00444-BR, 2015 WL 1514569, at *3 (D. Or. Mar. 19, 2015).

The erroneous premise of these decisions is that the defense is *proving* something when it challenges the government's case. It seems these decisions have lost sight of the fundamental principle that the defense does not have to prove its case. It only has to show that the government has not. As Judge Browning explained:

> A defendant never has to put on a case-in-chief or present any evidence at all, and often does not. As the Honorable Hugo L. Black, Associate Justice for the Supreme Court of the United States, famously stated, "[t]hroughout the process the defendant has a fundamental right to remain silent, in effect challenging the States at every point to: 'Prove it!'" *Williams v. Florida*, 399 U.S. 78, 112 (1970) (Black, J., dissenting). If rule 16(b)(1)(A)'s drafters meant the entire case could be the case-in-chief, it did not need to use the phrase case-in-chief, because the limitation would be meaningless.

*Harry*, 2014 WL 6065705, at *6. When Mr. Kelley exercises his right to put the government to its burden of proof, and points out gaps or flaws in the government's case, he is not pleading a case. His cross-examination of government witnesses simply does not trigger Rule 16(b)'s disclosure requirements.[2]

---

[2] To be clear, as *Holden* suggests, there may be instances in which both the government and the defendant wish to call a witness, in which case it makes sense to call the witness only once. In such cases, both the

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 5

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

Finally, none of the cases relied on by the government grapple with the serious constitutional concerns in requiring the defense to disclose its cross-examination exhibits to the government ahead of time.  The ability to conduct a vigorous and effective cross-examination is central to the right of a criminal defendant under the Sixth Amendment "to be confronted with the witnesses against him." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (quoting U.S. Const. amend. VI).  Thus, trial court orders that impede cross-examination are closely scrutinized.  *See, e.g.*, *United States v. Schoneberg*, 396 F.3d 1036, 1041-44 (9th Cir. 2004) (reversing conviction where district court limited material areas of cross-examination).  Short of forbidding cross-examination outright, it is difficult to imagine something that would impair cross-examination more severely than requiring the defendant to reveal which documents it intended to use ahead of time.  *See United States v. Cerro*, 775 F.2d 908, 915 (7th Cir. 1985) ("[A] defendant's interest in being able to conduct a vigorous and effective cross-examination . . . would be impaired if he had to give a précis of his cross-examination to the prosecution before trial.").  In this case, had Mr. Kelley been required to disclose Exhibit A-529 ahead of time, its effectiveness would have been blunted.  While the government laments Mr. Kelley's attack on Ms. Yates's credibility as "highly prejudicial," (Dkt. No. 514 at 9), challenging the credibility of witnesses is precisely what cross-examination is for.  And it is precisely what the Sixth Amendment right to confront witnesses guarantees.

The government's position amounts to nothing less than a reverse-*Brady* requirement: Simply stated, the government would require a defendant to disclose any evidence in its possession which it knows to be harmful to the government's case.  There is no authority for this proposed reverse-*Brady* requirement.  To the contrary, such a requirement would

---

government and defense examinations will be essentially direct examinations, and it may therefore be appropriate to require the defense to disclose evidence it intends to introduce through that witness.  But that is not the case here.

DEFENDANT TROY KELLEY'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCOVERY SANCTIONS (NO 3:15-cr-05198-RBL) - 6

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

unconstitutionally impinge on a defendant's Sixth Amendment right to effective cross-examination. The government's motion should be denied.[3]

### B. Even under *Hsia* and its Progeny, Ex. A-529 Would Not be Subject to Disclosure under Rule 16(b) because it Is Impeachment Evidence.

But even if we were to assume that *Hsia* and its progeny were the law in this district, A-529 would still not be discoverable. The federal rules do not require pre-trial disclosure of impeachment evidence. *United States v. Moore*, 208 F.3d 577, 579 (7th Cir. 2000) (holding that "case in chief" language in Rule 16 does not include evidence used "to impeach the testimony of a witness for the prosecution"); *United States v. Medearis*, 380 F.3d 1049, 1057 (8th Cir. 2004) ("Because counsel for Medearis was attempting to use the letter to impeach Whiting's testimony, it was not excludable under Rule 16(b)(1)(A)."); *see also United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985) ("Because the government's rebuttal evidence . . . was offered . . . to show that Mrs. Givens' testimony . . . was not credible, it was not discoverable under Rule 12.1(b)."). Thus, in *Swenson*, the court noted that "the defendant is not required to disclose evidence used to impeach a government witness by, for example, showing a prior inconsistent statement." *Swenson*, 298 F.R.D. at 477.[4]

As *Swenson* suggests, evidence of a witness' prior inconsistent statement is the paradigmatic example of impeachment evidence. Here, Exhibit A-529 was introduced to show that Ms. Yates was not telling the truth in her testimony when she insisted that she had *never*

---

[3] The government's proposed rule would also violate Mr. Kelley's due process rights. In *Wardius v. Oregon*, the Supreme Court held that criminal discovery rules which impose greater obligations on defendants than on the government violate the Due Process Clause of the Fourteenth Amendment. 412 U.S. 470, 471–72 (1973); *see also United States v. Bahamonde*, 445 F.3d 1225, 1229 (9th Cir. 2006) (holding regulation providing for unequal discovery violated *Wardius*'s mandate that "if there is to be any imbalance in discovery rights, it should work in the defendant's favor" (quoting *Wardius*, 412 U.S. at 475 & n.9)). Under the government's proposed rule, defendants would be required to turn over evidence that is properly characterized as rebuttal evidence. But under controlling Ninth Circuit law, the *government* is not required to turn over *its* rebuttal evidence. *See United States v. Givens*, 767 F.2d 574, 583–84 (9th Cir. 1985); *United States v. Hernandez-Meza*, 720 F.3d 760, 768–69 (9th Cir. 2013). *Wardius* forbids this type of unequal discovery obligation.

[4] As the government's brief concedes, *every* Court that has adopted *Swenson* has concluded that Rule 16 does not require disclosure of impeachment exhibits. *See* Dkt. No. 514 at 8.

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 7

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

discussed charging additional fees with Mr. Kelley.  As Exhibit A-529 shows, however, she and Mr. Kelley *did* discuss an additional fee, and Ms. Yates did not object when Mr. Kelley confirmed their conversation that he was going to start charging it.[5]  This is impeachment evidence in its purest form, and the government's claim that Mr. Kelley was required to disclose it is simply meritless.[6]

The fact that Exhibit A-529 also contradicts the government's theories in this case does not automatically make it part of the defense's case-in-chief.  Dkt. No. 514 at 8-9.  The government refers to Exhibit A-529 as "substantive evidence" as though its substance alone rendered it subject to Rule 16.  But as Judge Winmill explained in the *Swenson* case, elaborating on his earlier written ruling, if an exhibit has both impeaching and substantive content, the defendant is not required to disclose it:

> [T]he defense will not be required to disclose any exhibits which can fairly be used or described as an impeachment exhibit even if it does also have some substantive content.  If there is an overlap, then I think the defense has the right not to disclose an exhibit if it has a clear or at least a good faith basis for the defense to argue that it's really being offered or can be offered for impeachment purposes.

Hughes Decl., Ex. 1 (2/18/2014 *Swenson* Tr.) at 1379:10-16.[7]

The cases cited by the government make this clear, requiring not that the defendant turn over any substantive evidence, but rather any "substantive, **_non-impeachment_** evidence."  *United*

---

[5] It is worth pointing out that this exchange mirrored the Court's dismissal of Count 4 at the prior trial.  In that count, the government tried to prosecute Mr. Kelley for making a false statement when he said he discussed additional fees with Carl Lago.  SI ¶ 119.  As Mr. Lago himself testified, however, he *did* discuss an additional $5 fee with Mr. Kelley, Dkt. No. 279 at 3, and the Court therefore dismissed Count 4.  Dkt. No. 289.

[6] Of course, impeachment evidence extends beyond mere prior inconsistent statements, and includes any evidence the defendant "plans to use . . . to buttress his cross examination," *United States v. Cerro*, 775 F.2d 908, 915 (7th Cir. 1985), such as evidence of bias or interest, contradiction, bad character, or incapacity to observe or remember events.  *See, e.g.*, *United States v. Harris*, 557 F.3d 938, 942 (8th Cir. 2009); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 435 (D. Md. 2006).

[7] As discussed above, Mr. Kelley maintains that *Swenson* misstates the law under Rule 16.  But the government contends that *Swenson* should control.  Having chosen to wrap its arms around *Swenson*, the government must now take the bad with the good.

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 8

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

*States v. Aiyaswamy*, 15-CR-00568-LHK-1, 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (emphasis added). Indeed, courts have long recognized that impeachment evidence can include independent evidence that undermines or contradicts a witness' statement. *See, e.g.*, *Givens*, 767 F.2d at 583–84 (holding that evidence that was inconsistent with a witness's statement was impeachment evidence); *Cerro*, 775 F.2d at 915 ("[N]ot only does effective cross-examination require that counsel be prepared to prove the falsity of replies to questions intended to undermine the witness's credibility, but independent evidence is usually a more fertile source of impeachment in cross examination than replies to questions."). Exhibit A-529 falls squarely within the definition of impeachment evidence.

**C. Defense Counsel Was Not Found to Have Violated Discovery Rules in *Swenson*.**

As the government notes, the undersigned counsel represented one of the defendants in *Swenson*. The government is incorrect, however, that the *Swenson* court "held that defense counsel 'unreasonably' failed to produce evidence it intended to use in cross examination." Dkt. No. 514 at 2 (quoting *Swenson*, 298 F.R.D. at 477). In fact, Judge Winmill subsequently modified his written ruling, conceding that "the defendants were not unreasonable in treating the definition of case-in-chief in the manner that they did." Hughes Decl., Ex. 1 (2/18/2014 *Swenson* Tr.) at 1376: 21-23. As the Court explained, "There are clearly two definitions of case-in-chief. I opted for one that had been suggested by the government that there was no reason why the defense would have known that. That's certainly fair."). *Id.* at 1376:24-1377:2. The government's accusation against defense counsel is the product of an incomplete investigation into the issue.

**D. The Defendant Is Not Required to Disclose Details of His Investigation.**

In its motion, the government faults defense counsel for declining to provide the government information concerning their discovery of Exhibit A-529, and requests this Court to order defense counsel to provide that information. Dkt. No. 514 at 6–7, 9. The government

DEFENDANT TROY KELLEY'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCOVERY SANCTIONS (NO 3:15-cr-05198-RBL) - 9

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200 FAX (206) 407-2224

appears to ignore completely that an attorney's efforts in investigating claims and preparing for trial is protected by the work-product doctrine. *United States v. Nobles*, 422 U.S. 225, 238 (1975). Rule 16(b)(2) thus specifically carves out from disclosure any "documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense" or any "statement made to the defendant, or the defendant's attorney or agent, by: (i) the defendant; (ii) a government or defense witness; or (iii) a prospective government or defense witness." And it goes without saying that any communications between defense counsel and Mr. Kelley—about Exhibit A-529 or any other topic related to his defense—are protected by the attorney-client privilege. In short, the information the government demands is specifically shielded from disclosure under the work product doctrine, Rule 16(b)(2), and the attorney-client privilege. The government is not entitled to this information just because its witness got caught stretching the truth.

**E.   The Government's Insinuations that Exhibit A-529 Is Forged Are Meritless.**

Lacking authority for its position, the government falls back on the old chestnut that Exhibit A-529 is probably forged because it is inconsistent with the government's theory. Dkt. No. 514 at 2.[8]

Exhibit A-529, however, is well-corroborated. First and foremost, Ms. Yates admitted that it was an authentic document. Moreover, government Exhibit 302 shows that starting on January 12, 2004—the date of the emails in Exhibit A-529—Mr. Kelley began charging a $5.00 administrative fee on Fidelity files, demonstrating the falsity of Ms. Yates's testimony that she never authorized additional fees.[9] Hughes Decl., Ex. 2.[10] Further, Exhibit A-599.31 is a new

---

[8] The government has taken this same position before with respect to Exhibit A-1203 (i.e., Government Exhibit 2214 from the first trial) and, with respect to Exhibit 436, it has taken the closely related position that dubious-looking evidence must be authentic because it supports the government's case.
[9] The government has never produced Exhibit 302 in native format.
[10] The government notes that "[t]he day after Yates testified, two former Post Closing Department employees, Sharron Airey and De Lamb, testified that Post Closing Department never offered them any 'incentive' payment." Dkt. No. 514 at 6. But Exhibit A-529 does not discuss an incentive payment to

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 10

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

communication produced by the government only in the last few weeks.  It confirms that at the time of the emails in Exhibit A-529, Mr. Kelley and Ms. Yates were discussing web-based reconveyance tracking logs and mobile home title eliminations, the principle subjects of the emails in Exhibit A-529.  Hughes Decl., Ex. 3.  Finally, Exhibit A-529 has a look and feel that is consistent with emails produced by Fidelity in the *Cornelius* litigation.  Hughes Decl., Exs. 4–5.[11]

The government's argument to the contrary fails to raise any credible inference of forgery.

First, the government says that "Troy Kelley has testified under oath that [records] previously were lost or destroyed, and he did not produce this document either in litigation with Old Republic or at any time during his first trial."  Dkt. No. 514 at 2.  But this argument simply ignores that this document could have come from someone other than Mr. Kelley.

Second, the government says that "Julie Yates testified that she did not recognize the pertinent portion of the email."  *Id.*  But in fact, Ms. Yates authenticated the exhibit.  To the extent she professed not to recall the specific contents of a 13-and-a-half-year-old email, Occam's Razor suggests better explanations than forgery such as: (1) it is 13-and-a-half years old; (2) it was probably the only email she saw that the government had not prepped her on; and (3) the email contradicted sworn testimony she had given mere minutes before, and she was slightly unwilling to confront evidence that she had just given false testimony.

Third, the government claims "the email does not appear to be a complete document" and says "its appearance does not resemble the emails produced by Fidelity[.]"  *Id.*  But as noted *supra* at footnote 11, the email closely resembles emails produced by Fidelity in the *Cornelius*

---

PCD *employees*—it discusses an incentive payment to PCD.  Ms. Airey's and Ms. Lamb's testimony is therefore irrelevant.

[11] For example, like A-529, emails produced by Fidelity often include large blank spaces at the top, the words "Original Message" set off by five dashes on either side, and differing margins between emails in a single thread.  Hughes Decl., Exs. 4–5.

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 11

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

1  litigation.  While the government may be right that the two emails in Exhibit A-529 were merely
2  part of a larger chain, this certainly does not render the exhibit inadmissible or cast doubt on the
3  content of the relevant emails.  Further, the government has made the decision not to obtain
4  backup tapes from Fidelity containing Ms. Yates's emails from 2004 and 2005, despite the fact
5  that those emails are clearly relevant to this case.  It certainly cannot fault Mr. Kelley for
6  working with what he has.

7  Fourth, the government claims that "the charges in this case include an allegation that
8  Kelley previously has forged other documents."  *Id.*  First of all, no they don't.  Second, this
9  argument is almost breathtakingly circular.  The government's unproven claim that Mr. Kelley
10  forged documents is not evidence that Mr. Kelley forged documents.

11  Finally, the government tries to cast suspicion over Exhibit A-529 by noting that "the
12  defense has refused to provide any explanation for this document's mysterious sudden
13  appearance."  *Id.*  Here again, the government's argument swallows its own tail:  The fact that
14  defense counsel declined to give the government the relief it seeks does not show that the
15  government is entitled to that relief.  As discussed more fully above, defense counsel is not
16  required to divulge to the government details of its investigation.

17  The government's belated challenges to Exhibit A-529 are meritless.  The exhibit has
18  been admitted, and it is time for the government to move on.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///

DEFENDANT TROY KELLEY'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR DISCOVERY
SANCTIONS (NO 3:15-cr-05198-RBL) - 12

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

### III. CONCLUSION

For the foregoing reasons, Defendant Troy X. Kelley respectfully requests that this Court deny the government's Motion for Discovery Sanctions.

DATED this 21st day of November, 2017.

CALFO EAKES & OSTROVSKY PLLC


By: *s/Angelo J. Calfo*
Angelo J. Calfo, WSBA #27079
Patricia A. Eakes, WSBA No. 18888
Emily Dodds Powell, WSBA #49351
Andrew R.W. Hughes, WSBA #49515
1301 Second Avenue, Suite 2800
Seattle, WA  98101
Telephone:  (206) 407-2200
Email:   angeloc@calfoeakes.com
            pattye@calfoeakes.com
            emilyp@calfoeakes.com
            andrewh@calfoeakes.com

*Attorneys for Defendant Troy X. Kelley*

DEFENDANT TROY KELLEY'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCOVERY SANCTIONS (NO 3:15-cr-05198-RBL) - 13

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Andrew C. Friedman | Andrew.Friedman@usdoj.gov |
| Arlen R Storm | Arlen.Storm@usdoj.gov |
| C. Seth Wilkinson | Seth.Wilkinson@usdoj.gov |
| Michelle Jensen | Michelle.Jensen@usdoj.gov |
| Katheryn Kim Frierson | Katheryn.k.Frierson@usdoj.gov |

*s/ Mary J. Klemz*
Mary J. Klemz

DEFENDANT TROY KELLEY'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCOVERY SANCTIONS (NO 3:15-cr-05198-RBL) - 14

LAW OFFICES
**CALFO EAKES & OSTROVSKY PLLC**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2224